[No. 1433.]

JOHN VIETTI, Plaintiff and Respondent v. JAMES NESBITT and GEORGE NESBITT, Partners, etc., Firm Name of J. NESBITT & CO., Defendants and Appellants.

(Syllabus by Bigelow, C. J.)

1—Tenancy in Common—Partnership.—The defendants, with others, were the owners of a mine which was being worked by the plaintiff under an agreement that the ore extracted should be worked in a mill belonging to defendants, and the proceeds divided as follows: The defendants were to be paid $25 per ton for milling; the plaintiff was then to be paid the expense of extracting the ore; and the balance was to be divided equally between him and the owners of the mine: *Held*, that these parties were simply tenants in common of the ore and its proceeds, and no partnership existed between them.

2—Evidence Conflicting, Findings.—Facts found by the trial court upon conflicting evidence are conclusive upon appeal.

3—Parol Evidence—As to Written Agreement, Admitted Without Objection, Competent.—Where parol evidence of the contents of a written agreement is admitted without objection, no advantage of the fact of its incompetency can be taken afterwards. Under such circumstances the parol evidence is competent to establish what the terms of the contract were.

4—Relevancy of Testimony Under Facts of Case.—Upon a question of the amount of moisture contained in the ore, evidence of the amount found in other ore taken from the same ore body and worked under similar circumstances, is relevant.

5—Value, "Assay Value," What Is, Determined Under Facts.— Where by the agreement the millmen were to return to a certain per cent of the "assay value" of gold ore worked in the mill, this meant the standard assay value of gold as known everywhere, and not the value of gold bullion at the place where produced.

6—Interest, as Such, to be Collected Only Where Authorized by Statute.—Interest, as such, can only be collected where authorized by statute. In an action upon contract, where there has been no settlement and the balance due upon the contract is uncertain and unascertained, interest cannot be collected.

Appeal from judgment and order overruling motion for new trial, from District Court, Lincoln county; *G. F. Talbot*, District Judge.

The facts sufficiently appear in the opinion.

*George S. Sawyer* and *Richards & Macmillan*, for Appellant:

This was an action in *assumpsit* in the nature of an action for money had and received. The defendant demurred to plaintiff's complaint on the grounds that it stated no cause of action, and was ambiguous, etc., and urged that the complaint showed that plaintiff's remedy, if he had any, was in equity for an accounting, and that an action at law could not be maintained. The court overruled the demurrer, the defendants excepted and filed an answer denying nearly all the allegations of the complaint, and the case was tried by the court without a jury, and judgment rendered against defendants. Motion for new trial overruled and appeal taken.

I. The judgment is void for the reasons: (1) The complaint does not state facts sufficient to constitute a cause of action at law. It is a jumbled recital of disconnected occurrences, from which it is apparent that the cause of action, if any, arose from partnership transactions which have never been settled or adjusted, and which can only be settled by an accounting. The mine owners were mining partners in the profits of the working of the mine. (15 A. & E. Ency. of Law, 609, *et seq.*; 30 Cal. 93; 26 Cal. 69.) If plaintiff was to share in the net profits as he alleges, he thereby became a partner. (17 A. & E. Ency. of Law, 841, *et seq.*; Parsons on Partnership, chap. V. and notes; *Henderson* v. *Allen,* 23 Cal. 519; *Settembre* v. *Putnam,* 30 Cal. 490; *Quinn* v. *Quinn,* 81 Cal. 14.) If Cohen and McFadden, admitted to being mining partners with the defendants, could not sue the defendants at law, neither could the assignee of their partnership interest. (*Bullard* v. *Kinney,* 10 Cal. 60.) Neither partners nor assignees of partners can sue other partners in actions at law upon matters arising within the partnership until its affairs have been settled and a balance struck and agreed upon. (Parsons on Partnership, 278; *Ross* v. *Cornell,* 45 Cal. 133; *Bullard* v. *Kinney, supra.*) (2) If the action at law could not be maintained, the court as a court of law had no jurisdiction to render the judgment. (3) The item of interest in the judgment has no foundation.

II. The decision is not supported by the evidence, and is

contrary thereto. The burden of proof was upon the plaintiff to establish every material allegation of his complaint. This must be done by a preponderance of evidence, for if the weight of evidence was equal, *pro* and *con*, the parties would stand as they did upon their pleadings, and the plaintiff could not recover. (1 Greenleaf's Ev., sec. 74; *Scott* v. *Wood,* 81 Cal. 398.) There will be no evidence of the contents of a writing other than the writing itself except, etc. (Gen. Stats., sec. 3449.) When a contract is reduced to writing, all oral negotiations and agreements are merged in the writing, and the instrument must be treated as containing the whole contract. (*Gage* v . *Phillips,* 21 Nev. 153.) Verbal admissions are unreliable and should be received with great caution. (1 Greenleaf's Ev., 12th ed., sec. 200.)

III. Stats. 1893, p. 89, provides that where it appears that the evidence, taken together, does not support the verdict, or decision, or judgment, or decree of the court, a new trial shall be granted, or, upon appeal, the case shall be reversed without regard to whether there are express findings upon all the issues, or whether the specifications particularly point out the finding or findings, either express or implied, that are not supported by the evidence, or are contrary thereto.

*T. J. Osborne* and *Henry Rives,* for Respondent:

This is in *assumpsit* for money had and received by the defendants for the use and benefit of plaintiff and his assignors.

Appellants have waived any ambiguity and uncertainty in the complaint by answering over. The complaint certainly states a cause of action. A complaint may contain a statement of a "defective cause of action" which is fatal upon demurrer, but if it contains a defective statement of a good "cause of action," this irregularity, if such exists, is waived by answering over. (*Treadway* v. *Wilder,* 8 Nev. 91: *Lonkey* v. *Wells,* 16 Nev. 271; *Sweeney* v. *Schultes,* 19 Nev. 54; *Cal. St. Tel. Co.* v. *Patterson,* 1 Nev. 151; *Levy* v. *Fargo,* 1 Nev. 415; *State* v. *C. P. R. R. Co.,* 7 Nev. 99; *Jones* v. *Goodenough,* 7 Nev. 324; *Skyrme* v. *Occidental M. & M. Co.,* 8 Nev. 218; Bates Law of Part., p. 46; *Quackenbush* v. *Sawyer,* 54 Cal. 439; *McManus* v. *Ophir M. Co.,* 4 Nev. 15.)

There can be no partnership without an agreement to

become such among all the parties interested. (*Groves* v. *Tollman*, 8 Nev. 178; Parsons on Part., p. 59; *Chase* v. *Barrett*, 4 Paige, 148; *Hazard* v. *Hazard*, 1 Storey, 371.)

"Sharing profits as compensation for services" does not create a partnership. (17 Am. & Eng. Ency. of Law, 845-9, and cases cited on note 3, pp. 849, 850.)

The court acquired jurisdiction to settle and determine the last remaining account between all of the parties. (*Quackenbush* v. *Sawyer*, 54 Cal. 439; 17 Am. & Eng. Ency. of Law, 853, *et seq.*)

Parties may be held and bound as partners so far as third parties are concerned, yet in no way partners among themselves. (17 Am. & Eng. Ency. of Law, 849-50, note 1, *et seq.*) The case of *Henderson* v. *Allen*, 23 Cal. 519, does not define what constitutes a mining partnership. The case of *Settembre* v. *Putnam*, 30 Cal. 490, is a clear example of a mining partnership. The case of *Quinn* v. *Quinn*, 81 Cal. 15, is similar to *Ross* v. *Cornell*, and is a clear case of partnership as contradistinguished from a mining partnership which is usually equivocal and susceptible of doubt.

In reply to the case of *Bullard* v. *Kinney*, 10 Cal. 60, the plaintiff makes the same confession and avoidance as the last and contends that it is not applicable to the case at bar.

If there is any evidence to sustain the judgment or verdict of a court of first instance, appellate courts never disturb their conclusions. All presumptions are completely indulged in favor of judgment where there is any conflict of evidence. In support of these last two propositions, the plaintiff refers from and including the first of the Year Books to the Pacific Reporter, vol. 40, June 20, 1895.

In reply to the citation, *Gage* v. *Phillips*, 21 Nev. 153, plaintiff submits that it is irrelevant and immaterial. The doctrines laid down in Parsons on Partnership and Greenleaf on Evidence, quoted by appellants, are modified in each of those works as is the doctrine in 15 Am. & Eng. Ency. of Law, 809, *et seq.*, by the qualifications found in 17 Id. 849, *et seq.*, and especially in the authorities quoted in note 3 on said last-mentioned page.

There is a material conflict of evidence upon every important question of fact in this case.

[Here follows a long argument on the facts and cites the

proceedings in the California case of *Fox* v. *Hale & Norcross,* and sets forth a number of tabulated statements.]

By the Court, BIGELOW, C. J.:

The Jim Crow mine, owned by a number of persons, was held by the plaintiff under what the complaint designates a lease, and was producing ore. While the lease was in force, the defendants purchased a half interest in the mine. The defendants were also the owners of a quartz mill. In October, 1893, while this state of facts existed, a contract or agreement was entered into by all the parties in interest, whereby the defendants were to haul the ore so produced to their mill and there reduce it to bullion, they to account for 85 per cent of the assay value of the ore. Of the proceeds, the defendants were first to be allowed $25 per ton for hauling and working the ore, and then plaintiff was to be paid the expense of extracting it from the mine. There is no question upon either of these items. Fifty per cent of the balance was to be paid to the plaintiff, and the rest divided among the owners of the mine in proportion to their interests therein. Except as to the percentage to be accounted for, there seems to have been no serious controversy that these were the general terms of the agreement. The questions in the case are principally concerning matters incidental to the agreement. Several of the co-owners have assigned their claims under it to the plaintiff, and the action is brought to recover the 50 per cent due him, and the amount due those co-owners upon the reduction of the ore. Judgment was rendered in the plaintiff's favor for $25,266 08, and defendants appeal.

They first contend that the owners of the mine and the plaintiff were partners, and that consequently no action at law can be maintained by one against the others until there has been a settlement of partnership affairs, and a balance struck. This contention is based upon the allegations of the complaint; but, while that document is by no means a model, and is in some respects confused and self-contradictory, we are unable to find that it states such a state of affairs as would constitute a parnership between the parties here.

Whatever may have been the terms of the original lease, which are not stated, no question is made but that the rights of the parties are to be determined under the agreement of

October, 1893. The owners of the mine were, as such, tenants in common, pure and simple. They were not engaged in working the property; so there was no mining partnership between them. The mere fact that they, either jointly or severally, made a lease of the mine, under which each was to receive his proportional share, had certainly no tendency to establish that relationship. Each seems to have acted for himself, and defendants were to account to each for his portion of the proceeds, individually. The plaintiff was, in the first instance, to mine the ore at his own expense, and it does not appear that the owners were to have anything to do with that part of the business. While the plaintiff was to be repaid that expense out of the proceeds, this was simply one of the terms of the agreement under which the ore was being extracted. If no ore had been found, or it had paid nothing over milling expenses, the plaintiff must have sustained the entire loss. After the ore was mined, the plaintiff and several owners of the mine became the joint owners of it, in accordance with their several interests under the contract. It became personal property, in which they were tenants in common. (Freem. Coten., secs. 16, 100.) A mere joint ownership in personal property does not constitute the owners partners. (*Quackenbush* v. *Sawyer*, 54 Cal. 439.) In *Hudepohl* v. *Water Co.*, 80 Cal. 553, speaking of a similar contract, the court said: "As we construe the agreement, it was one for the working of the mine on shares, and the parties became tenants in common of the products of the mine when taken out. Such a contract does not create the relation of landlord and tenant, but fixes a rule for compensation for services rendered. It is, in all its essential features, a contract for labor to be performed, and to be paid for by a share of the profits realized from such labor." See, also, *Stuart* v. *Adams*, 89 Cal. 367. Certainly no partnership existed so far.

Then, as to the hauling and milling of the ore. That was done the same as defendants might have done similar work for any one else, and upon terms the same as those upon which the owners of the ore might have had it worked at any other mill. The mill men were paid a certain price therefor, and were to return a certain per cent of its assay value. Whatever profit they made upon the working was

their own, and any loss must have been sustained by them. Of course, under the terms of the agreement, both the expense of milling and the expense of mining the ore would reduce the net proceeds which would in the end go to the several parties, but it was the proceeds of ore which they held as tenants in common, and not as partners. The question here is one of actual partnership between the parties, and not as to what might render them liable, as partners, to third persons. Actual partnership depends upon the intention of the parties. "The true test of partnership, then, is the intention of the parties. They have agreed together for a certain purpose. If the purpose was the formation of an associated body, different from the individual parties, for which they were thereafter to act, they have formed a partnership." (Pars. Partn., sec. 54.) There need not necessarily be a formal agreement of partnership, but it must appear that the parties intended to enter into that relation which the law denominates a partnership. Without trying to define what would constitute such a relation, it is sufficient to say that the elements of one do not exist here. There was no such association of the individuals, either intentional or unintentional, as would constitute a firm. In fact, there seems to have been no association of them, whatever. The only relation was the accidental one that they owned undivided portions of the same property. There was no agreement to do business jointly, and no community of interest. Each represented his own interest; and no one of them, nor even a majority, had any right to dispose of the property, nor even to make any contract concerning any portion but his own. In *Dwinel* v. *Stone*, 30 Me. 384, the court says: "One essential element of a partnership is a community of interest in the subject-matter of it. *Tenet totum in communiet nihil separatim per se,* has been the keystone of the arch since the days of Bracton. From this arises the right of each partner to make contracts, to incur liabilities, manage the whole business, and dispose of the whole property of the partnership, for its purposes, in the same manner, and with the same power, as all the partners could when acting together." No such power over the common property existed here, and there was no mutual agency between the parties. It follows that there was no partnership.

There is some conflict in the evidence as to whether defendants were to pay plaintiff 50 per cent of the net proceeds of the ore. The defendants deny that they so. agreed; but, as they do not state what the agreement was, and it is beyond controversy, upon the showing made, that plaintiff had some interest in the ore, their testimony is not very satisfactory. However, the trial court having, upon conflicting evidence, found for the plaintiff, that finding becomes conclusive upon appeal. The same must be said concerning the percentage of the assay value for which the defendants were to account. The evidence was conflicting, and we are controlled by the finding that it was 85 per cent.

The defendants contend that, as it appeared that the agreement was in writing, parol evidence of its contents, which is all that was offered, was incompetent, and should not now be considered. The ground, however, upon which parol evidence of the contents of a writing is rejected is that it is not the best evidence. If the instrument has been destroyed, or the party offering it is, under certain other circumstances, unable to produce it, parol evidence of its terms may be the best and only evidence obtainable, and then it becomes strictly admissible. If the defendants were not satisfied with the parol proof, they should have objected, and had the writing produced or accounted for. Not having done so, they are concluded now from objecting that the evidence is incompetent to establish what the agreement was. "It is settled that if a party permits his adversary to prove his case by secondary evidence, he cannot afterward object that better evidence should have been produced. The secondary evidence is, under such circumstances, sufficient." (*Wright* v. *Roseberry,* 81 Cal. 87, 91.) "If evidence secondary or hearsay in its character be admitted without objection, no advantage can be taken of that fact afterwards; and the jury may—indeed, should—accept it as if it were admissible under the strictest rules of evidence." (*Sherwood* v. *Sissa,* 5 Nev. 349, 355.)

One question in the case was the amount of moisture which should be deducted from the gross weight of the ore, the plaintiff admitting 3 per cent, and defendants contending for 8 per cent. The court allowed 5 per cent; and, again recalling the rule where the evidence is in conflict, we certainly cannot say that any error was committed. As one method

of determining the amount of moisture, evidence was admitted, over defendant's objections, as to the amount contained in ore taken from the same ore body, and near where the ore in question came from, but in an adjoining mine, and shipped and worked under somewhat similar circumstances. We think this was some evidence upon the question in this case, and, consequently, that it was admissible. Defendants' criticisms upon it go more to its weight than to its relevancy. The same ruling applies also to the evidence concerning the assays of the battery samples taken by the plaintiff. His evidence tended to show that they had been carefully preserved, and had not been tampered with. The fact that they were not assayed until some months after they were taken might reflect upon their reliability, but, certainly, under the proofs, would not have justified their rejection.

Apparently as a part of the agreement, or, at least, with the consent of all parties, the defendants had converted the bullion, which was gold, into money. They contend that the bullion, where produced, was of the value of only $19 per ounce, whereas judgment has been rendered against them upon a valuation of $20.6718 per ounce, which we understand to be the standard assay value of gold. As defendants do not claim that they did not receive that amount for it, and as they were allowed the expense of marketing, no injustice seems to have been done, and the valuation appears to be strictly in accordance with the agreement. As the ore was gold ore, when the contract called for a certain per cent of assay value, some standard by which to estimate the value of the gold must have been understood, and this seems to be the only standard recognized anywhere. It was not shown that "assay value" is not the same in one place as in another. Or, if the term was intended to mean only the number of ounces of gold found in the rock, and the defendants saw fit to convert it into money instead of returning it in kind, in the absence of an agreement to the contrary no reason is suggested why they should not return to its owners the amount of money received by them, less the expense of the conversion.

Included in the judgment is a direction that the sum for which it is rendered shall draw interest from August 1, 1894, to the rendition of the judgment, on March 20, 1895. We are

of the opinion that this item is erroneous. If interest was permissible at all, it should have been computed and included in the judgment when entered (*Bibend* v. *Insurance Co.*, 30 Cal. 79); but, without stopping to inquire whether, as this was not done, it ever became a part of the judgment, and assuming that it did, we think no interest should have been allowed prior to the time judgment was rendered. At common law, no interest was allowed, and it is only permissible now when authorized by statute. (11 Am. & Eng. Enc. Law, tit. "Interest," p. 379.) Although interest is frequently allowed in actions involving torts-to property, it is simply by way of damages, and in actions where the amount of damages is more or less in the discretion of the court or jury. In such cases, in the absence of special circumstances of fraud or oppression, the legal rate of interest from the time of the commission of the wrong is a safe and uniform measure of damages. (*Glass Factory* v. *Reid*, 5 Cow. 587, 609.) But this is not that kind of a case, and interest was not included as a part of the plaintiff's damages, but as an incident to the amount due him under the contract, and allowed as a matter of law. As such, it does not come within the terms of our statute (Gen. Stats., sec. 4903, as amended, Stats. 1887, p. 82), and consequently was improper. But, as this mistake would doubtless have been corrected, upon motion, in the court below, we do not think it should affect the question of costs upon this appeal.

Some other points are made by appellants' counsel; but what we have said above sufficiently indicates our views concerning them. No error appearing except that concerning interest, the judgment will be modified by striking that out; and, as thus modified, it will be affirmed, respondent to recover his costs of appeal.

It is so ordered.