[No. 1544.]

## JAMES CRAWFORD, APPELLANT, v. MARY M. CRAWFORD, RESPONDENT.

APPEAL—CONFLICT OF EVIDENCE. This court will not weigh the evidence or determine the credibility of witnesses, and, where the record discloses a substantial conflict in the evidence, will allow the findings and judgment of the trial court to stand.

HUSBAND AND WIFE—CONFIDENTIAL RELATIONS—CONVEYANCES—UNDUE INFLUENCE—FRAUD. A wife, who had left her husband and instituted proceedings against him for divorce, and for the custody of the minor children, and for a portion of the property, upon the grounds of failure to furnish necessaries and cruelty in the use of profane language to herself and the children, agreed to return to him and dismiss her action for divorce conditioned upon his conveying to her certain property, most of which was community, and agreeing to refrain from certain acts in the future. Considerable time was consumed in perfecting the agreement. Each was careful, cool and deliberate in looking after his or her interests. Memoranda of terms of settlement were made and submitted. Each believed the other was acting in good faith. The husband was a strong-willed, resolute and determined man. The wife was sufficiently determined and persistent to fully protect her rights. The evidence was somewhat conflicting as to all the purposes of the conveyance, the husband contending that it was to induce the wife to return to and live with him and to dismiss the divorce proceedings, the wife contending that the deed was given for the support of herself and children should the husband fail to keep his promises regarding the furnishing of necessaries and the use of profanity. Both parties violated the terms of the agreement. The wife left her husband the second time, and instituted suit for divorce upon all the grounds set forth in her first action, with others. Issue was joined by the husband, and upon trial divorce was denied. The husband then brought this action to have the deed canceled and set aside, among

other reasons, for constructive fraud arising from the fact that the conveyance was executed while the relationship of husband and wife existed between the parties, and was to the advantage of the wife, and not to the advantage of the husband, and was obtained by undue influence: *Held*, that there was no evidence of undue influence or fraud vitiating the conveyance, within the rule that conveyances between persons occupying fiduciary or confidential relations to each other are constructively fraudulent.

EQUITY—CONFIDENTIAL OR FIDUCIARY RELATIONS—CONVEYANCES—FRAUD. In every fiduciary relation the law implies that one of the parties has a superiority over the other, and that the contract between them is to the advantage of the one presumptively superior.

HUSBAND AND WIFE — CONFIDENTIAL RELATIONS — COMMUNITY PROPERTY. The statute of this state regulating domestic affairs in respect to the community property recognizes the superiority of the husband.

APPEAL from the District Court of the State of Nevada, Washoe county; *A. E. Cheney*, District Judge:

Action by James Crawford against Mary M. Crawford, his wife, to have canceled a certain conveyance of property upon the ground of fraud. From a judgment for the defendant, and an order denying a new trial, plaintiff appeals. Affirmed.

The facts sufficiently appear in the opinion.

*Frank H. Norcross*, for Appellant:

I. Section 517 of the General Statutes of the state provides that: "Either husband or wife may enter into any contract, engagement or transaction with the other  *  *  * respecting property  *  *  * subject, in any contract, engagement, or transaction between themselves, to the general rules which control the actions of persons occupying relations of confidence and trust towards each other." "The influence which the law presumes to have been exercised by one spouse over the other is not an influence caused by any act or persuasion or importunity, but is that which is superinduced by the relation between them, and generated in the mind of one by the confiding trust which he has in the devotion and fidelity of the other. Such influence the law presumes to have been undue, whenever this confidence is subsequently violated or abused." (*Brison* v. *Brison*, 90 Cal. 323; *Brison* v. *Brison*, 75 Cal. 529; *Dolliver* v. *Dolliver*, 94 Cal. 642; *Hayne* v. *Herman*, 97 Cal. 262; *Dickenson* v. *Dickenson*, 24 Neb. 530; *Pinger* v. *Pinger*, 40 Minn. 417; *Witbeck* v. *Wit-*

*beck,* 25 Mich. 439; Biglow on Fraud (1888 ed.), 483, 261, 262; Kerr on Fraud, 151; 1 Story, Eq. Jur. par. 307–308; *Kellogg* v. *Kellogg,* (Colo.) 40 Pac. 358; *Munson* v. *Carter,* 19 Neb. 239; *Hartnett* v. *Hartnett,* (Neb.) 60 N. W. 362; *Huguenin* v. *Baseley,* vol. 2, part 2, Leading Cases in Equity, 1156, note to same, 1173–1290; Story, Eq. 307–327; Pomeroy's Eq. par. 951; 27 Am. & Eng. 452.)

II. Under the statutes of this state, there is no presumption of superiority of either spouse over the other. Both are presumed to stand upon a position of absolute equality towards each other. (*Brison* v. *Brison,* 75 Cal. 528; *Tilloux Tilloux,* 115 Cal. 670.)

III. When it appears, however, by proof, that there was no consideration, or that the marital confidence was used to take an unfair advantage, or that the confidence was subsequently violated, the burden of proof is cast upon the spouse seeking to maintain the advantage derived. (*Diamond* v. *Sanderson,* 103 Cal. 102; 1 Jones on Evidence, sec. 188; 1 Story Eq. Juris. par. 311; *White* v. *Warren,* 120 Cal. 322.)

IV. In the decision rendered in the lower court is the following: "As a matter of fact, the parties to this action seem to have treated each other in this transaction at arm's length, coolly and deliberately, each believing that what they agreed was for the best interests of all concerned." Further on the court holds that there is nothing in the proofs to warrant a finding that respondent held a position of superiority over her husband at the time she obtained from him the deed in question. I confess that I am utterly unable to conceive how, under the facts in this case, it can be said that, in the transaction which resulted in the making of this deed, the parties treated each other at arm's length, coolly and deliberately. A wife abandons her husband and takes with her their five children, and then institutes a divorce proceeding against him, in which he is accused of all manner of cruelty and inhumanity, and the court is asked to give her most of the property and the custody of the children, and all this is used as a club to drive a hard and unconscionable bargain with, and this is simply an ordinary business transaction done at arm's length, coolly and deliberately. But this is not all

—the divorce suit did not even possess the merit of being founded upon good grounds.

V.   The rule that a decision of a lower court on conflicting evidence will not be disturbed relates only to a substantial conflict.   (*State* v. *V. & T. R. R. Co.*, 23 Nev. 284.)

VI.   The rule of law stated by Mr. Pomeroy, and cited by respondent as authority in this case, has no applicability, for the reason that, under our statute, no condition of superiority of the husband over the wife or the wife over the husband is implied or presumed.

*Curler & Curler*, for Respondent:

I.   Fraud will never be imputed; a party alleging fraud must clearly and distinctly prove the fraud alleged.   The facts sufficient to establish fraud must be clear and convincing.   (*Gruber* v. *Baker*, 20 Nev. 453.)

II.   The finding of the court that the parties to the action treated each other in this transaction at arm's length, coolly and deliberately, with which counsel for appellant finds no fault, is abundantly supported by the evidence.   The matter was talked over between them several times, no mention is made of the use of any threats, no cajolery is used, nothing is said or done to warp the judgment of the appellant; the agreement is arrived at, and the appellant himself coolly and deliberately waits more than a month for a party to come in from the country from whom he can borrow money at a lower rate of interest than he would have to pay to other parties.

III.   The court finds that there was no undue influence or inequality in the parties to this transaction or any advantage of position which raises any presumption or proof of fraud, actual or constructive.   " That nothing in the evidence or case establishes any undue influence which overcame his judgment and made the contract other than his voluntary act."   " The plaintiff is a strong, industrious, temperate man.   That he is strong-willed and resolute is manifest."   The findings are not only not negative by the evidence, but find complete corroboration therein.   And this brings us to the only proposition in the case worthy of consideration, namely, the point that, because that the parties

to the deed are husband and wife, a relation of trust and confidence exists between them which makes this agreement presumptively fraudulent on the ground of undue influence.

IV. The principle of law invoked by the appellant— viz., the influence which the law presumes to have been exercised by one spouse over the other is not an influence caused by any act of persuasion or importunity, but it is that which is superinduced by the relation between them and generated in the mind of one by the confiding trust which he has in the devotion and fidelity of the other—has no application to the facts in this case, even if we admitted its soundness, which we question. In the first place, the fact that any confidence has subsequently been abused has not been shown, and the court finds that no confidence was abused. The respondent, at the time of the agreement, told the appellant that she would not live with him twenty-four hours if he swore at her and the children. He tacitly, at least, agreed to that proposition at the time, and later made out the deed in question.

V. The statutes themselves permit contracts of this kind to be made, subject to the general rules which control the actions of persons occupying relations of confidence and trust towards each other. The general rule is stated very succinctly by Mr. Pomeroy, in his work on Equity Jurisprudence, as follows: " While equity does not deny the possibility of valid transactions between the two parties, yet, because every fiduciary relation implies a condition of *superiority* held by one of the parties over the other in every transaction by which the *superior party* obtains a possible benefit, equity raises a presumption against its validity, and casts upon that party (the superior party) the burden of proving affirmatively its compliance with equitable requisites and of thereby overcoming the presumption." (Pomeroy's Equity Jurisprudence, par. 956.)

VI. There is naturally no presumption of the existence of undue influence of the wife over the husband; it must be inferred, if at all, from the circumstances of the case. (1 Bigelow on Fraud, 353; 27 Am. & Eng. Ency. of Law, p. 484; *Tilloux* v. *Tilloux*, 115 Cal. 663.)

By the Court, MASSEY, J.:

The appellant sought by this action to have canceled and set ·aside a certain deed to real estate situated in Washoe county, made by him to the respondent, who is his wife, the execution of which is claimed to have been obtained by fraud and undue influence.

It is shown by the complaint, briefly stated, that the parties were married on the 6th day of May, 1883, and ever since have been and were at the commencement of the action husband and wife; that they lived and cohabited together as husband and wife until about the 1st day of October, 1896; that there were born of said marriage five children, all of whom are living; that on the last-named date the respondent, without any just cause or reason, abandoned the appel- ·lant, taking with her the said children;˙that thereafter she instituted proceedings to obtain a divorce upon the grounds of alleged cruelty; that the appellant thereby became greatly disturbed and agitated in mind, and feeling that there was no just reason for said proceedings, and that the same would be disgraceful to themselves and their children, and result in injury to their children, and believing it would be for the best interests of all concerned that the family should be reunited, made overtures to the respondent for that purpose; that it was claimed by the respondent that many of·their domestic troubles had been caused by difficulties over money matters and the use of vulgar and profane language towards the respondent and their children; that the effort tò adjust these domestic troubles resulted in certain agreements and ·promises, made with perfect trust and confidence, to the effect that the respondent should abandon the divorce proceedings instituted, the family should again be reunited, all past differences between them should be forgotten, each should work faithfully to promote the happiness of all, and that the appellant should convey the property in controversy to the respondent for the benefit and support of the family; that, pursuant to such adjustment, the appellant executed to the respondent the property in controversy on the 4th day of November, 1896; that the consideration recited in the conveyance was one dollar, was not in fact a consideration therefor, and no money was paid or intended to be paid as a

consideration of such conveyance; that the property conveyed by the deed constituted all the community property and a portion of the separate property of the appellant.

It is further shown by the complaint that the respondent failed to keep the promises made by reason of which appellant was induced to make such conveyance; that, after the respondent had returned with their children to appellant's home, the appellant had endeavored to keep his promises except in certain instances; that the respondent, after her return, had conducted herself in a most provoking manner, and in such a way as to try the appellant's patience, frequently beyond endurance, and certain specified actions of perverseness are set out, which are claimed to be in direct violation of respondent's promises, and proof that same were made in bad faith; that on the 1st of September, 1897, without any cause, the respondent again deserted the plaintiff, taking with her their children, and instituted, in conjunction with her brother, an unwarranted criminal prosecution, and on the 4th of September, 1897, again instituted divorce proceedings upon the alleged ground of extreme cruelty, which in fact did not exist, and demanded judgment for a dissolution of the bonds of marriage, the care, custody and control of the children, and the personal property belonging to the appellant. A copy of the deed is annexed to the complaint and made a part of the same.

To this complaint the defendant, by answer, entered a denial; trial was had, and the court decided that, under the pleadings and the proof, the appellant was not entitled to a decree canceling the deed upon any of the grounds alleged. A motion for a new trial was interposed by the appellant, the same was submitted to the court upon a statement, and denied. Thereupon the appellant appealed from the judgment and from the order denying the motion for a new trial. The error assigned and discussed by counsel for appellant in his brief is that the decision and judgment of the court are not supported by and are contrary to the evidence, and are contrary to the law.

It will be observed that the right of the appellant to recover in the action is based upon the actual fraud of the respondent in making the agreement and promises for the

adjustment of their domestic troubles, which were claimed to be the sole consideration of the conveyance; and such fraud is alleged to have been proven by the subsequent acts of the respondent in violation of the agreement, from which it is urged that the respondent did not enter into the agreement in good faith or with the intention to keep the same. The right to recover is also based upon constructive fraud arising from the fact that the conveyance was executed while the relation of husband and wife existed between the parties, such conveyance being to the advantage of the respondent and not to the advantage of the appellant.

As to the first claim, the court found in direct terms that it was not sustained by the proofs. The facts relating to the divorce proceedings are established by the records in that action. The facts relied upon by counsel for appellant other than those shown by the record are taken almost entirely from the testimony of appellant. An examination of the record discloses that nearly, if not all, material points upon which appellant relies were contradicted or materially changed by the testimony of the respondent—not only as to the facts touching the violation of the agreement by the respondent, which go to her good faith in making it, but it also contradicts or modifies the testimony of appellant upon the very material point as to the reason and purposes of the execution of the deed. This court will not, under well-established rules, weigh the evidence or determine the credibility of witnesses, and, in cases where the record, as in this, discloses a substantial conflict in the evidence, will allow the findings and judgment of the trial court to stand.

Coming now to the question of constructive fraud, we find that our statute provides that either husband or wife may enter into any contract, engagement, or transaction with the other, or with any other person respecting property, which either might enter into if unmarried, subject, in any contract, engagement, or transaction between themselves, to the general rules which control the actions of persons occupying relations of confidence and trust towards each other. (Gen. Stats. 517.)

The general rule of equity regulating dealings between parties occupying fiduciary relations, or relations of trust

and confidence, is well known. It is said: "In this class of cases there is often to be found some intermixture of deceit, imposition, overreaching, unconscionable advantage, or other mark of direct and positive fraud. But the principle on which courts of equity act in regard thereto stands, independent of any such ingredient, upon a motive of general public policy; and it is designed in some degree as a protection to the parties against the effect of overweening confidence and self-delusion and the infirmities of hasty and precipitate judgment." (Story's Eq. Jur. sec. 307.)

It is also said: "The doctrine to be examined arises from the very conception and existence of a fiduciary relation. While equity does not deny the possibility of a valid transaction between the two parties, yet, because every fiduciary relation implies a condition of superiority held by one of the parties over the other in every transaction between them by which the superior party obtains a possible benefit, equity raises a presumption against its validity, and casts upon that party the burden of proving affirmatively its compliance with equitable requisites, and thereby overcoming the presumption." (Pomeroy's Eq. Jur. sec. 956.)

The foundation of this principle is based upon the fact that the law implies that one of the parties to the relation has a superiority over the other, and that the contract is to the advantage of the one presumptively superior. The relation itself often suggests in which of the parties this presumptive superiority rests. Thus, the mere statement of "guardian and ward," "parent and child," or "attorney and client" suggests the party. The rules of the common law recognized the husband as the superior party in the relation of husband and wife. (Schouler's Domestic Relations, pp. 10, 51.)

Whether or not our statute intended to adopt the rule of the common law in this class of cases under which the husband was recognized as the superior party in the relation of husband and wife, it is not necessary to decide. If it does, then, without further showing, must the contention of the appellant fall, and the judgment be sustained. Our statute regulating the domestic affairs in respect to the community property recognizes the superiority of the husband in this

relation.   But assuming that, under the facts, the law recog-
nizes the wife as the superior party in this relation, and
applying the general rule stated in Story (Story's Equity
Jurisprudence, sec. 323) based upon the reasons of the rule
given by Story and Pomeroy as above cited—that whenever
confidence is imposed, and one party has it in his power, in
a secret manner, for his own advantage, to sacrifice those
interests which he is bound to protect, he will not be per-
mitted to hold any such advantage—then must the appel-
lant's case fall.

The trial court found, in terms, that the parties had treated
each other coolly and deliberately, each believing that what
they agreed to was for the best interests of all concerned.   It
seems to us, from the showing made by both parties, that
their domestic troubles were caused in part by complaints on
account of the failure of the appellant to furnish necessaries
for the respondent and their children, or the means to pur-
chase the same; that much of the property conveyed was
community property; that, after the first separation, they
met a number of times and endeavored to adjust their diffi-
culties; that memoranda of terms of settlement were made
and submitted, discussed and considered deliberately; that,
after the terms had been practically agreed upon, quite a
time expired before the conveyance was made; that the
appellant was a strong, healthy man; that each was carefully
and deliberately looking after his or her own interests; that
each believed the other was acting in good faith; that, after
the execution of the deed, discussions occurred as to the sub-
sequent conduct of the parties in reference to their agreement;
that both were desirous of settling their troubles and resum-
ing the marital relations; that both had violated the terms
of their compact, and, by the testimony of the respondent,
that the deed was executed for the support of the respondent
and their children in case the appellant should fail to keep
his promises.   To state the matter differently, it does not
appear from the evidence that the respondent sacrificed, in
secret manner, for her own advantages, in violation of con-
fidence, any interest which she was bound to protect.

The trial court in discussing this matter uses the following
language:   "The plaintiff is a strong, industrious, temperate

and determined man, who, by thrift and energy, has accumulated valuable property. That he is strong-willed and resolute is manifest. · It is also plain that he is of quick temper, and, upon reflection, conscious of the errors which his hasty temper leads him into. From his own admissions, it is clear that he did not think that he had lived up to his part of the agreement. The first separation was because of his persistent use of violent and profane language—a habit which he admits he could control; and the failure of the defendant to continue to live with him, as she had agreed to do by this contract, was chiefly due to the same cause. The defendant also is sufficiently determined and persistent to fully protect her rights in any dealings which the parties had. I see no evidence of any undue influence or inequality in the parties to this transaction, or any advantage of position which raises any presumption or proof of fraud, actual or constructive. The causes which have prevented the full performance of this agreement seem to me to be individual rather than contractual—to be matters subsequent to and independent of the deed rather than entering into its execution and impairing its validity. The only confidence which was misplaced was the confidence which was mutually entertained in the ability of each to forget and forgive their past domestic differences, and begin life anew, in accordance with their agreement."

An examination of the testimony presented in the record seems to fully sustain this statement of the trial court.

A number of cases decided by the Supreme Court of California and by the courts of other states have been cited in support of the appellant's contention. It is only necessary to say that an examination of those cases clearly shows wherein they are distinguishable from the case at bar.

The case of *Brison* v. *Brison*, 75 Cal. 529, and 90 Cal. 329, was an action to compel a reconveyance of property from the wife to the husband where such property had formerly been conveyed to the wife in trust, and where such reconveyance had been refused.

The case of *Dolliver* v. *Dolliver*, 94 Cal. 642, was brought by the wife to rescind a contract obtained by the husband after abandonment and the institution of proceedings in divorce by the husband under proof that the wife was a suf-

ferer from nervous prostration at the time, and the recitals in the contract as to the property of the husband and the rights of the wife were false, and that the divorce proceedings were brought by the husband to harass his wife, and as a means of coercing her to surrender her property to him.

So, *Hayne* v. *Herman*, 97 Cal. 262, was an action to have certain property declared trust.

The action in *Dickerson* v. *Dickerson*, 24 Neb. 530, was brought to compel the reconveyance of property to the husband by the wife, where such conveyance had been obtained by the wife upon the suggestion that, in case of the husband's death, she would be left without support, and she thereafter abandoned him without cause. The court held that where a party, who, by means of confidential relations between the parties, obtains the property of the other by deceit and imposition, will be compelled, in a proper case, by a court of equity, to restore the same. Applying the rule announced in this case to the one at bar, in view of the facts already stated, it cannot be said that the deed from the appellant was obtained by the deceit or imposition of the respondent.

It is not necessary to further review the authorities relied upon by the appellant, as the ones already commented on mark the difference between the case at bar and the cases cited.

The claim of the appellant that the court erred in refusing to allow him to answer certain questions asked in no wise prejudiced his rights. It appears from the testimony that all the facts relating to the transaction between the parties had been fully detailed by the appellant, and it was not material to the issues whether the appellant expected or did not expect that his wife would make a demand for the conveyance; nor was it material whether or not he expected any pecuniary benefit from the transfer of the property. For the same reasons, the ruling of the court upon the other questions asked in no manner prejudiced his rights.

The judgment of the court and the order appealed from will be affirmed.