[No. 1894]

# I. S. THOMPSON, H. V. MOREHOUSE, AND J. G. THOMPSON, COPARTNERS, RESPONDENTS, v. TONOPAH LUMBER COMPANY (A CORPORATION), APPELLANT.

[141 Pac. 69]

1. APPEAL AND ERROR — REVIEW — FINDINGS OF TRIAL COURT — EVIDENCE.

Where, in an action for attorney's services, the court found that plaintiffs were entitled to recover fees on the basis of a schedule claimed to have been submitted by them to defendant before the services were rendered, and that the schedule rates were the reasonable value of the services, the case would be so considered on appeal, and the opinions of experts, placing a different value on the services rendered, would not be regarded as controlling.

2. TRIAL—FINDINGS—DUTY TO PROPOSE.

Though a party is entitled to specific findings regarding material issues on which a judgment is based, if he prepares and submits them to the court with a request therefor, the court is not required to draw them.

3. APPEAL AND ERROR — FINDINGS ON CONFLICTING EVIDENCE — REVIEW.

The supreme court will not disturb the finding of the trial court on conflicting evidence, if there is any substantial evidence to support it.

4. APPEAL AND ERROR—TRIAL TO COURT—FINDINGS—REVIEW.

In cases tried to the court without a jury, the same consideration is given to the court's findings as to a verdict, and the same rules apply as to reversing them on appeal, on the ground that they are contrary to the evidence, as apply to a verdict.

5. ATTORNEY AND CLIENT—ACTION FOR SERVICES—SCHEDULE OF FEES.

Where attorneys, before rendering services, submitted to defendant a schedule of fees that would be charged, and the court, in an action for services rendered, found on expert evidence that the services were reasonably of the schedule values, such finding was sufficient to sustain a judgment to the extent of such values, without reference to whether the schedule was itself binding on defendant.

6. ATTORNEY AND CLIENT—ACTION FOR SERVICES—EVIDENCE..

Where, prior to the rendition of services by attorneys, they submitted a schedule of fees calling for a retainer of $200 a month to cover office work, including adjusting claims or settling suits out of court, as well as advising, drawing contracts, making forms, etc., and in an action for services testified that their office work for defendant amounted to an average of two hours a day, the court did not err in admitting evidence to show the value of such services.

7. INTEREST—OPEN ACCOUNT.
    In an action on an open account for attorneys' fees, plaintiffs cannot recover interest prior to judgment, as provided.by Rev. Laws, sec. 2499.

APPEAL from the Seventh Judicial District Court, Esmeralda County; *Theron Stevens,* Judge.

Action by I. S. Thompson and others, doing business as Thompson, Morehouse & Thompson, against the Tonopah Lumber Company.   Judgment for plaintiffs, and defendant appeals.   **Modified and affirmed on condition.**

*P. E. Keeler,* for Appellant.

*Thompson, Morehouse & Thompson, in pro. per.,* for Respondents.

By the Court, TALBOT, C. J.:

This is an action to recover a balance of $6,267.88, claimed to be due for legal services rendered to appellant, Tonopah Lumber Company, between the 1st day of June, 1907, and the 1st day of April, 1908.   In the bill of particulars, rendered by the respondents on demand, they claimed $3,784.45 for services in sixteen mechanics' lien cases, $1,550 for six attachment suits and one foreclosure case, and $2,233.43 for legal advice, office work, and making seventeen liens between those dates.   Indebtedness was denied and payment in full for services rendered alleged by defendant.   After an extended trial, findings were filed and judgment rendered by the district court in favor of respondents for $2,544.93, and $296.90 interest on that sum from the 1st day of March, 1908, to the time of judgment.   Appellant filed a motion for specific findings as to the nature and value of the services rendered in each of the cases itemized in the bill of particulars, as to whether appellant ever agreed to pay a monthly retainer as demanded in this bill, and as to whether, on a specified date, O. W. Kay was employed by and had authority to bind appellant, as contended by respondents on the trial.   This motion was denied, and

in this connection it does not appear that appellant drew or submitted to the court any findings or prepared findings for approval or disapproval.

It is urged that the court erred in denying the motion for specific findings on the items of the bill of particulars; in refusing to find when, if at all, appellant agreed to pay respondents a monthly retainer on the terms and conditions of the agreement; in admitting testimony relating to conversations and transactions on February 18 and 19, 1908, with O. W. Kay, who had been in charge of appellant's Goldfield yard, and exhibits based on such conversations; in failing to find whether, on those dates, Kay was the authorized agent of appellant; in admitting expert testimony as to the value of office work and legal advice occupying on an average two hours daily; and in allowing interest prior to the date of judgment. It is also urged that the decision is not supported by and is contrary to the evidence.

On November 3, 1907, the respondents made a proposed schedule of fees, addressed to the Tonopah Lumber Company, which began in this manner: "In order to settle and determine our charges against your company, we submit the following proposition: The company to pay our firm per month cash, $200, this to cover all services of the firm for all office work, including drawing of mechanics' liens, making of contracts, forms, etc."

Following was a detailed statement of proposed charges for foreclosure suits, based on the size of the claim, and specifying different charges for filing complaint, for settlement before issue joined, and for services after issue joined. The respondents made the following additional schedule of fees:

"Goldfield, Nev., Jan. 10, '08.

"Tonopah Lumber Co., Goldfield, Nevada. Gentlemen: At the request of your Mr. O. W. Kay, of this place, we have revised our charges for services rendered you since the first day of June, 1907.

"Our retainer fee, to be $200 per month, which shall

cover all office work, including adjusting claims or settling suits out of court as well as advising, drawing contracts, making forms, etc.

"Suits to Foreclose Liens.

"1. On suits not exceeding $250, $25.00 on filing the complaint, and $25.00 on issue joined; for attending trial and entering of judgment, such amount as the court may fix.

"2. In suits involving more than $250, and not exceeding $1000, 10% of the amount on filing complaint, and 10% additional on issue joined; for attending the trial and entering judgment, such fee as shall be fixed by the court.

"3. Suits above $1,000, 10% of amount upon filing complaint and $100 upon issue joined; for attending trial and entering judgment, such fee as may be allowed by the court.

"In paying the amount of fee fixed by the court, it is understood that the amount paid by the corporation on filing complaint and on issue joined is to be deducted and only the balance paid to counsel.

"In an attachment or other suit, the same amount shall be allowed as is set forth in paragraphs 1, 2 and 3, except that nothing additional is allowed for trial or judgment.

"In all suits on mechanics' liens, the company will recover the full amount of the attorneys' fees, and in all settlements before judgment the corporation has an opportunity to collect in fees more than they are required to pay us. As to the contingent fee, the company will receive $25 for filing each lien to be collected from the party against whom the lien is filed.

"We feel that our charges are very reasonable in this matter, and trust that this statement will be accepted by your company. We are, very respectfully,

"Thompson, Morehouse & Thompson,

"By I. S. Thompson."

It appears that copies of these schedules were delivered or sent to Mr. Kay at Goldfield, and to the Tonopah Lumber Company at Tonopah.

Under date of February 18, 1908, the respondents presented a bill against the company, which Mr. Kay tried to adjust. He objected to charges on six of the lien claims because suits on them had not been started, and they were eliminated in an amended bill presented or dated the following day. At that time he had been superseded as manager for the company at Goldfield, but was under agreement to take charge of the lumber business for the company at Schurz, and he was trying to have these accounts adjusted with Mr. Walker, who had succeeded to the Goldfield management for the respondents.

On behalf of the plaintiffs, lawyers testified that they deemed the services rendered by the plaintiffs to be worth much more than the fees proposed by the schedule. Other lawyers, on behalf of the defendant, testified that they considered the services worth less in various instances than had been estimated by the witnesses for the plaintiffs.

According to the testimony of an earlier manager in charge of the Goldfield branch of the Tonopah Lumber Company at the time of the commencement of the services rendered, he understood, from what respondents said several months prior to the submission of the schedules, that they were to charge $25 for drawing each lien, and that they would accept the amounts allowed by the court to be paid by the owner of the property against which the lien was filed for the remainder of their fees. The president and manager testifies that this was reported to and approved by him. If such had been the agreement, which was not found by the court, it would not apply to or control in all of the cases in which charges were made, because most of the suits brought, owing to settlement or for other reasons, or at the request of the appellant, were not pressed to judgment, so that the respondents could recover a fee to be fixed by the court. It is not shown that there was any agreement prior to the submission of the schedules regarding the payment of fees to respondents in suits to be brought which might be compromised or not brought

to trial, and in which no fee would be determined upon foreclosure.

[1] As the court found that the respondents were entitled to recover fees for their services on the basis of the schedules they submitted, and that such schedule rates were the reasonable value of the services, we feel constrained to consider the case on this basis and to not regard as controlling the opinions of experts placing a different value on the services.

[2] Although a party is entitled to specific findings regarding material issues upon which a judgment is based if he prepares, submits to the court, and requests such findings, it is not necessary for the court to draw the findings. Nor does it appear that otherwise there is any prejudicial error by reason of the omission of the findings desired by appellant when the court based its opinion and judgment upon a schedule of fees prepared by the respondents, which is in the record, and which indicates the amounts to which the respondents are entitled for the various services for which charges are made.

[3] The district court, acting in place of a jury, which could have been demanded by either party, was the judge of the conflicting evidence, and its finding and conclusion thereon will not be set aside on appeal. It is well settled that this court will not disturb the decision of the trial court, if there is any substantial evidence to support it. (*Tonopah Lumber Co.* v. *Nevada Amusement Co.*, 30 Nev. 445, 97 Pac. 636; *Turley* v. *Thomas*, 31 Nev. 181, 101 Pac. 568, 135 Am. St. Rep. 667; *Palmer* v. *Culverwell*, 24 Nev. 114, 50 Pac. 1; *Welland* v. *Williams*, 21 Nev. 230, 29 Pac. 403; *Craw* v. *Wilson*, 22 Nev. 385, 40 Pac. 1076; *Vietti* v. *Nesbitt*, 22 Nev. 390, 41 Pac. 151; *Crawford* v. *Crawford*, 24 Nev. 410, 56 Pac. 94; *Barnes* v. *Western Union Telegraph Co.*, 27 Nev. 438, 76 Pac. 931, 65 L. R. A. 666, 163 Am. St. Rep. 776, 1 Ann. Cas. 346; *Ford* v. *Campbell*, 29 Nev. 578, 92 Pac. 206; *Abel* v. *Hitt*, 30 Nev. 93, 93 Pac. 227.)

[4] In cases tried by the court without a jury, the

same weight and consideration is given to the findings as to a verdict, and the same rules apply as to reversing them on appeal on the ground of being contrary to the evidence as to a verdict. (*State* v. *Yellow Jacket M. Co.,* 5 Nev. 415.)

[5] Taking this view of the case, it is unnecessary to determine whether O. W. Kay was authorized to bind the company in settling or fixing the fees of respondents on the 18th and 19th days of February, or previously, or whether the company became bound by the schedule of fees by agreement of its authorized manager or by the aquiescence in continuing to accept the services of the respondents for a considerable period after their submission of schedules, which could be considered in the nature of an estoppel or treated by the court as mere declarations by the respondents against their right to recover larger fees than they had proposed in them, when the company could have regarded them as an assurance that no larger fees would be charged. If it be admitted that Kay was without authority to bind or represent the appellant on February 18, or at any other time, the conclusion of the district court, supported by the expert evidence that the services were reasonably of the schedule values, is sufficient to sustain the judgment to the extent of those values. As the case is controlled by the application of the schedules to the services performed, his objections and admissions to bills rendered by respondents are not regarded as harmful statements or evidence.

[6] Nor are we prepared to say that there was any error in admitting evidence regarding the value of legal services and office work, occupying on an average two hours daily. Under the opinion of the district court, the value of this service, including the drawing of liens and and assistance in collections, is controlled and covered by the schedule rate of $200 per month. We do not find in the record evidence that these services were rendered for more than nine months.

In the case brought by the appellant against the

Nevada Amusement Company to foreclose a lien, the fee of $300 allowed by the court was paid after the commencement of this action. Under the expert evidence introduced by the appellant, as well as that on behalf of the respondents, the reasonable value of their services performed in that case on the trial and on the appeal is more than that amount, but by the opinion the fee is also governed by the schedule, which limits it to the amount allowed by the court. On this theory a judgment in excess of the schedule rates is not supported by the evidence, although there is testimony which, if it had been approved by the court, would authorize judgment for a larger amount.

On the schedule basis, the fees which respondents are entitled to recover are:

| *Lien Foreclosures* | *Debt* | *Fee* |
|---|---|---|
| In the Hippodrome Theater case, which was consolidated on trial with the proceeding to foreclose the Marks mortgage on the same property, amount fixed by the court on the application of respondents | $786.00 | $250.00 |
| Charles Le Febvre, fee fixed by the court | 1,109.00 | 200.00 |
| Palm Grill, not filed, schedule fee $46.60, fee collected | ............ | 75.00 |
| Nettie B. Issard, not filed | 198.93 | 25.00 |
| Vernal Ex. Mines Co., complaint filed, no issue | 129.13 | 25.00 |
| Review Publ. Co., not filed | 260.00 | 26.00 |
| Gold. Comb. L. & M. Co., complaint filed, no issue | 126.00 | 25.00 |
| Gold. N.Y. L. & M. Co., complaint filed, no issue | 90.20 | 25.00 |
| Feb. Atlanta L. & M. Co., complaint filed, no issue | 242.65 | 25.00 |
| Blue Bull M. Co., complaint filed, no issue | 453.89 | 45.59 |
| Nev. Greenwater M. Co., complaint filed, no issue | 346.36 | 34.64 |
| Gold. Banner L. & M. Co., not filed | 193.08 | 25.00 |
| Dave Wilson, complaint filed, no issue | 404.00 | 40.40 |
| Nelson Goldf. M. Co., complaint filed, no issue | 1,430.00 | 143.00 |
| M. Rogers, complaint filed, no issue | 204.00 | 25.00 |
| | | |
| *Attachment Suits* | | |
| Gold. Wilbur N. Co., complaint filed, no issue | 404.00 | 40.40 |
| Donnelley, complaint filed, no issue | 370.00 | 37.00 |
| Gold. Bar M. Co., complaint filed, no issue | 911.00 | 91.10 |
| Goldf. Mfg. Co., complaint filed, no issue | 1,775.00 | 177.30 |
| Lida Queen M. Co., complaint filed, no issue | 714.00 | 71.40 |

| *Attachment Suits* | *Debt* | *Fee* |
|---|---|---|
| Diffenbaugh, complaint filed, no issue | $68.00 | $25.00 |
| Nine months' retainer, drawing liens and office work | | 1,800.00 |
| | | $3,231.83 |
| Less amount which the court found had been paid to respondents | | 1,247.93 |
| Total | | $1,983.90 |

[7] The action being for an open account, the plaintiffs were not entitled to interest prior to judgment. (Rev. Laws, sec. 2499; *Vietti* v. *Nesbitt*, 22 Nev. 399, 41 Pac. 151.)

If, within fifteen days, respondents file their consent to a modification of the judgment so that it will award them $1,983.90 balance for their services, the motion for a new trial will be denied, and the case remanded to the lower court, with instructions to modify the judgment accordingly. Otherwise a new trial will be granted.

NORCROSS, J.: I concur.

[NOTE—McCARRAN, J., not having become a. member of the court until after the argument and submission of the case, did not participate in the opinion.]