## CARPENTER *v.* MEXICAN NAT. R. Co.

*(Circuit Court, W. D. Texas, San Antonio Div.* May 17, 1889.)

1. MASTER AND SERVANT—FELLOW-SERVANTS—BRAKEMAN AND CAR INSPECTOR.
   A car inspector is not a fellow-servant with a brakeman, but is a representative of the employer.
2. SAME—RISKS OF EMPLOYMENT—LATENT DEFECTS.
   While a brakeman cannot recover for injuries caused by defective brakes if he had, or by the exercise of reasonable prudence might have had, knowledge of such defects, he is not bound to look for latent or hidden defects.
3. SAME—MEASURE OF DAMAGES FOR PERSONAL INJURIES.
   In estimating damages for personal injuries to plaintiff, a servant, caused by defective appliances, the jury may consider (1) the value of the time lost during the period of disability; (2) fair compensation for the mental and physical suffering caused by the injury; (3) the probable effect of the injury upon plaintiff's future health, and ability to earn money and pursue the course of life for which he was fitted.

At Law.

Action by W. J. Carpenter for damages for personal injuries.

*S. G. Newton, W. Showalter,* and *C. C. Pierce,* for plaintiff.

*Thomas W. Dodd,* for defendant.

MAXEY, J., *(charging jury.)* The plaintiff, W. J. Carpenter, brings this suit to recover damages of the defendant, the Mexican National Railroad Company, and his petition alleges that at the time he received the injuries complained of he was employed in the service of the defendant as a brakeman, and was then performing his usual duties as such employé; that his injuries resulted from the negligence of defendant in failing to furnish the cars upon which he was working with proper and safe brakes and machinery for stopping the train. The accident occurred at or near a place called "El Puerto," in the republic of Mexico, on the 30th of April, 1888. To inform you more accurately of the plaintiff's cause of action, I will read to you the following extracts from his petition:

"That when said train upon which said defendant was employed arrived at said place called 'El Puerto,' and began to descend said down grade, plaintiff and two other employés set all the brakes upon all the cars in said train with great care, and as rapidly as the same could be done, but that said brakes would not work, and were not fit for the purpose for which they were used, and could not be made to press sufficiently upon the car-wheels to check the motion of the train; that the chains and all the machinery of the said brakes were defective in construction, and not in good and safe condition, and were not fit and adapted for the purposes for which they were used; that because said machinery of said brakes would not work, said train of cars upon which plaintiff was employed, upon entering upon said down grade, began to move down the said grade at a terrific and dangerous rate of speed, and that there were no means to check the said train, and that said train became unmanageable; that plaintiff and his fellow-brakeman did everything that skillful and prudent men in such affairs could do to check and control said train, and to preserve their own lives and limbs; that, while said train was so moving at

such terrific rate of speed, plaintiff was on top of one of said cars in the performance of his duties as brakeman, and that the immense strain caused by the rapid motion broke a journal of one of the cars, and that thereupon the car jumped the track and threw plaintiff to the ground with such force that the bones of his left leg, from the knee to the ankle, were broken and crushed, and the flesh thereof torn and mangled, and that he was otherwise greatly injured and hurt; * * * that if said cars upon said freight train had had suitable brakes and machinery for stopping and slowing, the said train could have been easily stopped, and said injuries to plaintiff prevented; that said defendant, in placing cars with defective brakes and machinery for stopping or slowing them in the train upon which plaintiff was so employed, was guilty of great negligence, which was the cause of plaintiff's said injuries."

The defendant answers: (1) By general denial,—that is, it denies all the allegations in the plaintiff's petition,—which devolves upon the plaintiff the duty of proving his cause of action as he has alleged it. (2) That the injuries complained of by plaintiff were caused by the breaking of a journal of one of the cars forming the train upon which plaintiff was employed; that the breaking of the journal aforesaid was one of those unforeseen accidents against which no foresight could guard or prevent; and that the plaintiff's injuries, therefore, were one of the risks assumed by him in accepting employment in defendant's service, for which no recovery can be had. (3) Defendant further denies liability on the following grounds, set out in its answer: "That if plaintiff's injury was in any manner or remotely attributable to the lack of a sufficient number of brakes to keep the train under control,—which is specially denied,—such failure was the fault and negligence of the car inspector, a fellow-servant of plaintiff, and whose duty it was to inspect carefully all cars, car-wheels, brakes, etc., before departure of trains; and if he failed in that particular to discharge his duty, it was the failure of a fellow-servant, and for which plaintiff ought not to recover; and of this the defendant puts itself upon the country." (4) Defendant further interposes the defense of contributive negligence on the part of plaintiff and his fellow-brakeman, in bar of this action.

You observe that the plaintiff predicates his right to recover on the ground that the brakes on the cars composing the train were defective, unsafe, and wholly insufficient to enable the employés (including himself, the conductor Wiggins, and the brakeman Sullivan) to control the train in its descent of the grade at El Puerto. To entitle him to a recovery he must prove his cause of action as alleged,—that is to say, the testimony must satisfy you that the brakes were defective, unsafe, and insufficient to enable the employés to keep the train under control; that the defendant knew, or by the exercise of ordinary and reasonable care ought to have known, of the unsafe and defective condition of the brakes; and that the plaintiff's injuries resulted from the use of such defective appliances. If his injuries resulted from some other cause, or from a risk incidental to the service in which he was engaged,—as the purely accidental breaking of a journal of a car, disconnected from the use of defective brakes,—he could not, in this event, recover against the defendant; for it is a rule of law that, "in general, when a servant, in the ex-

ecution of his master's business, receives an injury which befalls him from one of the risks incident to the business, he cannot hold the master responsible, but must bear the consequences himself. The reason most generally assigned for this rule is that the servant, when he engages in the employment, does so in view of all the incidental hazards, and that he and his employer, when making their negotiations, fixing the terms, and agreeing upon the compensation that shall be paid to him, must have contemplated these as having an important bearing upon their stipulation. As the servant then knows that he will be exposed to the incidental risks, 'he must be supposed to have contracted that, as between himself and the master, he would run this risk.'" *Tuttle* v. *Railway Co.*, 122 U. S. 195, 196, 7 Sup. Ct. Rep. 1166, 1168. But you are instructed it is also an equally well-recognized principle "that it is the duty of the employer * * * to furnish sufficient and safe materials, machinery, or other means by which it [the service] is to be performed, and to keep them in repair and order. This duty he cannot delegate to a servant so as to exempt himself from liability for injuries caused to another servant by its omission. Indeed, no duty required of him for the safety and protection of his servants can be transferred, so as to exonerate him from such liability. The servant does not undertake to incur the risks arising * * * from defective machinery or other instruments with which he is to work. His contract implies that in regard to these matters his employer will make adequate provision that no danger shall ensue to him." *Railroad Co.* v. *Herbert*, 116 U. S. 647, 648, 6 Sup. Ct. Rep. 590. The plaintiff, therefore, when he entered the service of defendant, did not, by virtue of his contract of employment, assume any risk incidental to the use of defective appliances or machinery, of which defects he was ignorant; and it was the duty of the defendant, in employing the plaintiff as a brakeman, to provide its cars with safe and suitable brakes and appliances to be used by him. Whether the cars upon which plaintiff was working at the time he was hurt were provided with safe and sufficient brakes is a question of fact which you must determine for yourselves from a consideration of the testimony. The mere fact that the defendant had in its employment a competent car inspector would not, of itself, exonerate it from liability if the brakes on the cars were defective in construction, or not in proper repair; for he was the representative of the defendant, and not a fellow-servant of plaintiff in the sense contended by the defendant's counsel; and, if he failed to exercise due and reasonable care in inspecting the brakes of the cars, and keeping them in proper repair, then for any negligence on his part in that respect, from which injury resulted to plaintiff, the defendant would be liable. 116 U. S. 648, 652, 6 Sup. Ct. Rep. 593–595.

In this immediate connection your attention is directed to another principle of law touching the duty of the plaintiff. He was bound to exercise reasonable and ordinary care to avoid injuries to himself; and if the brakes on the cars, at the time he was hurt, were defective, and he knew, or might have known by ordinary attention, their condition, and thus exposed himself to danger,—in other words, using the language

of the supreme court, "if he did not use his senses as men generally use theirs to keep from harm,—he cannot complain of the injury which he suffered." 116 U. S. 655, 6 Sup. Ct. Rep. 597. But the principle of law as to the duty of plaintiff under such circumstances is subject to the qualification that he was not required to inspect the brakes to ascertain whether or not there were latent or hidden imperfections or defects in or about them (if there were any defects at all) which rendered their use more hazardous. That was a duty of the defendant, the general principle of law being that, "unless the defects are such as to be obvious, open to common observation, to any one giving attention to the duties of the occasion, the employé has the right to assume that the employer has performed his duty in respect to the implements and machinery furnished." *Railway Co.* v. *Bradford,* 66 Tex. 735, 2 S. W. Rep. 595. Bearing in mind the foregoing directions, you will inquire whether the brakes on the cars at the time plaintiff received his injuries were sufficient in number, and properly adapted to the purpose for which they were used. Were they sufficiently numerous, and in proper condition of repair, to enable the persons using them to properly manage the train, and keep it under control? If so, then it will be your duty to return a verdict in favor of defendant. If, however, the brakes were unsafe or defective, and the defendant knew of their defective and unsafe condition, or could have discovered it by the exercise of reasonable care and diligence, and the plaintiff was ignorant of the defects, and could not have ascertained their condition by the exercise of ordinary care and caution; and if the injuries of which he complains resulted from such unsafe or defective condition of the brakes,—that is to say, if, as claimed by the plaintiff, the journal testified to broke in consequence of defective or unsafe condition of the brakes, and he was thereby injured,—then you will return a verdict in favor of the plaintiff for such amount of actual damages as will compensate him for the injuries he has sustained. In making your estimate of such damages you are authorized to consider (1) the value of the time lost by the plaintiff during the period in which he was disabled, from his injuries, to work and labor, taking into consideration the nature of his business and the value of his services in conducting the same; (2) fair compensation for the mental and physical suffering caused by the injury; (3) the probable effect of the injury in future upon his health, and the use of his injured foot and leg, and his ability to labor and attend to his affairs, and, generally, any reduction of his power and capacity to earn money and pursue the course of life which he might otherwise have done. *Railroad Co.* v. *Randall,* 50 Tex. 261. The object of the law in cases like the present is simply to compensate the injured party for the injuries he has sustained; nothing more. It therefore follows, and you are instructed, that the plaintiff is not entitled to recover exemplary or punitive damages.

You are the exclusive judges of the credibility of the witnesses, and of the weight to be attached to their testimony; and in civil suits, such as the present one, you may predicate your finding upon a preponderance of evidence. You have just heard the testimony, and are familiar

with all the facts in the case, and I will not attempt to review them. It is now your duty to render such a verdict as will be just and right in view of the testimony and the law as embodied in these instructions.