*THOMAS J. THOMPSON and wife v. THE WESTERN UNION TELEGRAPH COMPANY.

*Telegraphs—Negligence—Judge's Charge.*

1. If a prayer for instruction is given substantially in the charge, though not in the very words asked, it is sufficient.

2. A general exception "to the charge as given," without specifying any particulars, will be disregarded. *McKinnon* v. *Morrison,* 104 N. C., 354.

3. When an erroneous prayer asked by appellant is given, he cannot be heard to complain.

4. Mental suffering, caused by negligence and delay in delivery of a telegram not of a pecuniary nature, may be ground of damages, though no physical pain or pecuniary loss is suffered. *Young* v. *Telegraph Co.,* at this term.

*Head-notes by CLARK, J.

5. An omission to charge on a particular aspect of the case is not error, unless an instruction was asked and refused. *State* v. *Bailey*, 100 N. C., 528.

6. Where a telegram is sent by a wife about to be confined to summon her husband, and, by reason of negligent delay in the delivery of twenty-four hours, he did not arrive, whereby, the complaint alleges, she suffered more physical pain, mental anxiety and alarm on account of her condition, and sustained permanent and incurable physical injury for want of his presence and services: *Held*, such damages are not too remote.

7. Where the jury gave substantial damages, which are affirmed on appeal, it is unnecessary to consider the charge given as to nominal damages.

8. Where a telegraph office had the sign of the defendant company over the door, and the operator at that point testified that he paid over all receipts to the treasurer of said company, the office was *prima facie* an office of the defendant.

9. The stipulation on a telegraphic blank against liability for an unrepeated message does not protect the company when such message is negligently delayed in transmission. If such stipulation has any validity at all, it is only in cases of a mistake in transmitting, and then only when the negligence is slight.

10. Non-residents can sue in the Courts of this State.

This was a CIVIL ACTION, tried before *Bynum, J.*, and a jury, at April Term, 1889, of CASWELL Superior Court.

The plaintiff's wife being about to be confined, and at that time in Danville, Va., her son, by her direction, delivered a telegram to agent of defendant company in Danville, Va., addressed to her husband at Milton, N. C., "Father, come at once; mother is sick," and paid for the same. The telegram was not delivered till next day, in the afternoon, a delay, according to the conflict of evidence, of twenty-four to twenty-eight hours. By reason of the delay, the plaintiff complained that on his arrival the child had been born (dead), and his wife had suffered greater pain, physically and mentally, than if he had reached home in time, as he would have done if the telegram had been delivered with reasonable promptitude, and for lack of his services and presence,

and by reason thereof she suffered a premature delivery, and incurred a permanent and incurable physical injury therefrom.

The defendant's exceptions were—

*First Exception.*—Upon his re-direct examination, plaintiff's counsel proposed to ask witness if he had been with his wife in her previous confinements. Defendant's counsel objected. Objection overruled, and exception. Witness answers: "I was present with my wife on nearly every occasion when she had been delivered; had a doctor every time but once, when it was over before the doctor got there. I delivered her myself. I had hired a carriage in Milton to start immediately on receiving dispatch. Did not write because. I heard that it was over. Saw no use in going when train would carry me two hours later."

*Second Exception.*—Mary E. Thompson, introduced as a witness in her own behalf, testifies: "I am wife of T. J. Thompson. At time I sent telegram was complaining right smart, expecting confinement. Ordered telegram sent about 10 o'clock; sent it so my husband would come home quick; had a difficult labor; was in labor from eight o'clock till twelve o'clock at night. Had twelve children before this." Counsel proposed to ask this question of witness: "State what effect the failure of your husband to arrive had upon you." Defendant's counsel objects. Objection overruled, and exception. Witness answers: "I was worried, and it caused me to be a great deal worse than I would have been. If he had been there I would have been contented, and would not have had such long suffering. I was taken about eight o'clock; about ten o'clock the pains came on me; I sent the dispatch and felt easier; thought he would get there in two hours and a half; he didn't come, then I got uneasy, and worried; it hurt me more than anything else. I then sent for doctors; could not get any; Dr. Day came about dark   I was by myself all day, my sister-in-law there occa-

sionally. I had a little child a year and a half old which needed attention during the day, and I had to attend to it, and did attend to it, and lifted it up and put it down several times. After the train came and Thompson did not come, I gave up; was suffering anything but death; asked the doctor what made the child so long coming; he said it got hung somehow; child was born about twelve o'clock at night. From the anxiety and suffering, and Thompson's absence, I have suffered from that day to this; if he had been there it would not have been so. I did not have proper attention; have suffered in lower part of my bowels and back ever since."

The third exception was for refusal to nonsuit plaintiffs because non-residents.

The fourth exception is stated in the opinion.

The fifth exception was for the refusal to give the fifth prayer for instructions, which was as follows:

"The defendant asks the Court to instruct the jury that the defendant company has a perfect right to limit its liability on unrepeated messages for mistakes and delays in their transmission and delivery, and, if the jury believe, from the evidence, that the message in question in this action was not ordered by the sender to be repeated, and that it was received by the defendant company as an unrepeated message, then it was subject to such limitation imposed by said company, and the plaintiffs cannot recover in this action unless the defendant company was guilty of gross negligence."

The Court instructed the jury instead, "that the law of unrepeated messages, which had been. argued to them by counsel on both sides, did not apply to this case, as the cause alleged for damages here was not for incorrectly transmitting and delivering a message, but for delay in delivering it."

The fifth exception was for refusal of eighth and ninth prayers for instruction, and was abandoned on the argument.

The defendant also excepted generally "to the charge as given."

The defendant's prayers for instruction 1, 2, 3 and 4 were given as asked, and were as follows:

"1. The Court instructs the jury that if they believe, from the evidence, that the delay in the delivery of the telegram of February 1st, 1888, sent by Alley Thompson from Danville to Milton, North Carolina, was due to the bad weather that prevailed at that time, or to any causes which were beyond the control of the defendant company, then they must find for the said defendant company.

"2. The Court instructs the jury that if they believe, from the evidence, that when Alley Thompson delivered the message in question in this case at the office of the defendant company in Danville, Virginia, he was told that the wires of the company were in trouble, and that said message was received subject to delay on that account, and he then, with this knowledge, left the message, which was sent off as promptly as the condition of the wires would permit, then they must find for the company.

"3. If they believe, from the evidence, that the message was not delivered at said office until after Mrs. Thompson was taken in labor, and that no degree of diligence on the part of the defendant, after it was so received, could have transmitted it to Milton in time for Mr. Thompson to receive it and come to Danville in time to relieve his sick wife of anxiety on account of his absence, then defendant cannot be held amenable for such anxiety, and the jury must find for defendant.

"4. If they believe that Mr. Thompson knew of the condition of his wife and failed to make proper provision for being present at the time of her confinement, or that she allowed the time of her confinement to approach so near before attempting to notify him of her condition through the defendant company, it became impossible for the notice

to reach the said husband in time for him to come to the relief of his wife in her then condition. and that such failure to provide for his presence, or the failure of the wife to notify her husband in time for him to come so far contributed to the wrongs and injuries complained of that, without said failures on their part, said wrongs and injuries would not have happened, then they must find for defendant."

The fifth prayer, and the charge given in lieu, are stated above.

The sixth prayer was that the Court should instruct the jury, "that if they believe, from the evidence, that the pain and anxiety and distress of the complainants were from any improper conduct on the part of either of them, or from any thoughtless or unguarded act of either of them under the circumstances, or for the failure of either of them to use and exercise proper care, foresight and prudence, considering their condition, or that the said pain, anxiety, distress, and the wrongs and injuries complained of were from any other cause whatsoever than from the negligence of the defendant company, then they must find for the said defendant." In response to which the Court charged, in the fifth paragraph of the charge, upon the third issue, "If the jury believe, from the evidence, that the wrongs and injuries complained of are the direct and proximate result of the negligence of the defendant company—that they followed as a natural consequence of the negligence of said defendant company— then they must answer said third issue 'Yes.' But if they believe that said wrongs and injuries were produced by any cause whatsoever other than the negligence of said defendant company, then they must answer said third issue 'No.'"

The seventh prayer, which was given, was: "The Court instructs the jury that mental suffering and mental anguish, unless productive of special damages, or resulting from personal injury, are not, alone, sufficient ground upon

which to maintain an action for damages, and if they believe, from the evidence, that mental anguish and suffering are the only grounds for damages in this action, they must find for the defendant company."

The eighth and ninth prayers were refused, in words, but were given, substantially, in the charge, and exception as to them was abandoned, as above stated.

Verdict and judgment for plaintiff. Appeal by defendant.

*Mr. J. W. Graham*, for plaintiff.
*Mr. G. V. Strong*, for defendant.

CLARK, J.: This is a petition to rehear the case reported in 106 N. C., 549.

Upon a careful review of the former opinion of the Court, we think the petition should be allowed. The fifth paragraph of the charge is a substantial compliance with plaintiff's sixth request to charge. There is no specified exception to the charge. The appellant cannot be heard to complain of an instruction not excepted to, especially when it follows, in substance, his prayer of instruction.

The Court was misled by the somewhat confusing "make-up" of the lengthy record into supposing that defendant's seventh prayer for instruction was passed over unnoticed in the charge, and, while the Court did not pass upon the correctness of the prayer, it held that the Court below should have granted or have refused it, so that the jury might have had the benefit of the construction of the law involved in the request. A second examination shows that, in fact, the instruction was given as asked by the defendant. It was an erroneous instruction, as has since been held in *Young* v. *Telegraph Co.*, at this term, but, as the error was in favor of the appellant, it cannot be cause of complaint by him.

There was no request to charge that the negligence of the defendant, as shown, was too remote to sustain the action,

and an omission to charge upon any particular aspect of a case is not error, unless an instruction is asked and refused. *State* v. *Bailey*, 100 N. C., 528, and cases there cited. In fact, however, the damages were not too remote, as we think.

A case similar in some respects to this is *Telegraph Co.* v. *Cooper*, 71 Tex., 507. It is there said: "If it is made to appear from the testimony that Mrs. Cooper suffered more physical pain, mental anxiety and alarm on account of her own condition than she would have done if Dr. Keating had been in attendance upon her, and the failure to secure his services is shown to be due to the want of proper care on the part of the defendant's servants, whose duty it was to deliver the message, a fair and reasonable compensation should be allowed for such increased pain and mental suffering." In that case it was a doctor who was telegraphed for, and here the husband, but the *gravamen* of the complaint is the same— "increased pain and mental suffering," by reason of the absence of the party telegraphed for, who would have been present had not the defendant company negligently delayed the delivery of the telegram.

The instruction as to nominal damages was not excepted to, and, besides, as the jury gave substantial damages, we cannot see how the appellant could have been prejudiced. These views require us to consider the other exceptions, which were not passed upon in the former opinion.

The first and second exceptions were to the evidence, and were without merit. The appellant, on the argument, properly abandoned the third exception, which was for a refusal to nonsuit the plaintiff, on the ground that he was a citizen of Virginia, and, therefore (as was urged below), incompetent to maintain this action in the Courts of this State. *Walters* v. *Breeder*, 3 Jones, 64; *Miller* v. *Black*, 2 Jones, 341.

The fourth exception was to the ruling of the Court that, under the evidence, there was *prima facie* an office of the Western Union Telegraph Company in Milton. The evi-

dence of the agent there was that the office in Milton had the sign of that company over the door, and that the money received for sending or receiving messages was paid by him to the Treasurer of that Company. Also, it was in evidence that the defendant received the message at Danville for transmission to Milton. We find no error in this ruling. It would seem that it was made upon defendant's contention that there was no evidence to show that it was responsible for the office at Milton.

The defendant's first, second, third, fourth and seventh prayers were given. The sixth prayer was substantially given as above stated. The eighth and ninth prayers were substantially given in the charge, and the exception as to them was abandoned in this Court. The fifth exception was for refusal to give the fifth prayer, which was that, as the message was unrepeated, the defendant, as per terms printed on its blanks, was not liable for delay in transmitting unless guilty of gross negligence. The stipulation as to repeating messages has been held reasonable in some Courts as to mistakes in transmission, but not as to delays. In *Lassiter* v. *Telegraph Co.*, 89 N. C., 334, it is held that it is a reasonable requirement "to insure accuracy," but that the exemption from liability for non-observance of such requirement is "not extended to acts or omissions involving gross negligence, but is confined to such as are incident to the service, and which may occur where there is but slight culpability in its officers and employees." In *Pegram* v. *Telegraph Co.*, 97 N. C., 57, which was also a case of mistake in the message, the Court re-affirmed *Lassiter* v. *Telegraph Co.*, but holds that what would be ordinary negligence in sending a message apparently of small consequence might be gross negligence where it was manifest that the message was important. It is held that "the stipulation on the company's blanks restricting liability for unrepeated messages is unreasonable and void where the complaint is not of a mistake in the mes-

sage, but for delay or failure in delivery." *W. U. Tel. Co.* v. *Broesche,* 72 Tex., 654; 13 Am. St. Rep., 843. The more recent cases founded upon the more thorough investigation and thought given to the subject are to the effect that any stipulation restricting the liability of the telegraph company for negligence, even as to mistakes in transmission, is void. In *Smith* v. *Telegraph Co.,* 83 Ky., 104, it is said: "Telegraph companies are public agents engaged in a *quasi* public business; care and fidelity are essential to their character as public servants, and public policy forbids that they should abdicate their duties as to the public by a contract with an individual, who is but one of millions, whose business, perhaps, will not admit either of delay or contest in the Courts, but who is compelled to submit to any terms that the company may impose, and the law should not uphold a contract by which public agents seek to shelter themselves from the consequences of their own wrong and neglect." In a still more recent case (*Gillis* v. *Telegraph Co.,* 61 Vt., 461; 15 Am. St. Rep., 917), this is quoted and approved to its full extent, and cases supporting this principle, many in number and from Courts of the highest authority, are given.

It is sufficient, however, for us to say that the present is a case of a delay, not of a mistake, in the transmission, and that the nature of the message and the length of the delay (about twenty-four hours) both make it a case of gross negligence, unless accounted for to the satisfaction of the jury, which was not done.

There was no other exception than those we have passed upon, except the general and vague one, "to the charge as given," which is too indefinite to give any information either to the appellee or the Court. According to the rulings of nearly all, if not all, appellate Courts, and certainly of this Court, it does not call for consideration. *McKinnon* v. *Morrison,* 104 N. C., 354.

On a review of the exceptions of the appellants, we can find no error committed in the trial below. Let this be certified.

*Per Curiam.*                                    Petition allowed.