[No. 1633.]

WILLIAM BARNES, BY T. J. BARNES, HIS GUARDIAN
AD LITEM, RESPONDENT, *v.* THE WESTERN UNION
TELEGRAPH COMPANY, A CORPORATION, APPEL-
LANT.

TELEGRAPHS—FAILURE TO DELIVER MESSAGE—CONTRIBUTORY NEGLIGENCE—
DAMAGES—APPEAL.

1. Where evidence is conflicting, the findings of the trial court will not be
disturbed.
2. In an action for injuries resulting from a telegraph company's failure to
deliver a message, the negligent acts of third parties, with which the
plaintiff was not connected, could not be relied on to relieve the com-
pany of liability.
3. Where, by reason of a telegraph company's failure to deliver a message,
the sender was placed in a strange city, 400 miles from home, with
only $1.25 in his pocket, and in trying to reach home suffered cold and
hunger, and mental worry and distress, $400 damages was not
excessive.
4. Semble: Damages are recoverable for mental suffering caused by a tort,
whether in connection with physical suffering or not.
5. Where, on delivering to a telegraph company a message requesting the
sender's brother to send him a ticket by telegram, the sender informed
the agent that he had no means to lay over, his suffering from cold
and hunger in sleeping out of doors at nights, and in attempting to
reach his home 400 miles distant, resulting from failure to deliver the
telegram, were damages reasonably within the contemplation of the
parties in making the contract to send the message, and hence not too
remote to entitle the sender to recover therefor.

BELKNAP, C. J., dissenting.

APPEAL from the First Judicial District Court, Storey
County; *C. E. Mack*, Judge.

Action by William Barnes, by T. J. Barnes, his guardian
*ad litem*, against the Western Union Telegraph Company.
From a judgment in favor of plaintiff, defendant appeals.
**Affirmed.**

The facts sufficiently appear in the opinion.

*Geo. H. Fearons, Cheney, Massey & Smith*, and *R. B. Car-
penter*, for Appellant:

I. The damages in this case are remote and contingent
and have no connection whatever with the delay in the
delivery of the message. The universal rule of the courts is
that the measure of damages for the breach of a contract
with a telegraph company, as well as any other contract,

must be limited to those which may be fairly considered as arising from the usual course of things from the breach of the very contract in question, or which both parties may reasonably have understood and contemplated when making the contract as likely to result from its breach. This is expressly held in: *Primrose* v. W. U. Tel. Co., 154 U. S. 1; *Sanders* v. *Stewart*, 1 Com. Pl. Div. 106; *Mackay* v. W. U. Tel. Co., 16 Nev. 222; *Candee* v. W. U. Tel. Co., 54 Wis. 471; W. U. Tel. Co. v. *Martin*, 9 Ill. Ap. 587; *Shields* v. *Washington Tel. Co.*, 9 W. Law Journal, Mar. 18, 1852; *Hill* v. W. U. Tel. Co., 20 S. E. 135: W. U. Tel. Co. v. *Wilson*, 32 Fla. 527.

*E. S. Farrington*, for Respondent:

I.   *Defendant was negligent.* The telegram was received in Lovelock at 1:10 a. m., February 19th. No effort was made to deliver it on that day; no effort was made to deliver it on the 21st; it was not delivered until February 22d. The telegram was not deposited in the postoffice at Lovelock, as required by the rule of the telegraph company. The sending office was not notified that the telegram could not be delivered. The telegram could have been delivered at T. J. Barnes' residence in Lovelock at any time. Barnes was in Lovelock and at his home within three hundred yards of the telegraph office every day, except February 20th. If it had been deposited in the postoffice, it would have been received, and William Barnes would have received his ticket. (*Telegraph Co.* v. *Gossett*, 38 S. W. 536; *Hill* v. *Telegraph Co.*, 20 S. E. 135; *Tel. Co.* v. *Cunningham*, 14 So. Rep. 579; *Tel. Co.* v. *Piner*, 29 S. W. 66; *Candee* v. *Tel. Co.*, 34 Wis. 471.) Gross negligence means the absence of the care that was requisite under the circumstances. (Deering on Negligence, sec. 11; *Tel. Co.* v. *Griswold*, 41 Am. Rep. 504.)

II.   *Damages Not Remote:* The damages in this case are neither remote nor contingent, but they are the direct natural and proximate result of the delay in delivery of the telegram under the special circumstances which were known to the defendant. (*Hadley* v. *Baxendale*, 9 Exch. 341; Croswell on Electricity, sec. 578; W. U. Tel. Co. v. *Gossett*, 38 S. W. 536; *Hendershot* v. W. U. Tel. Co., 76 N. W. 830; W. U. Tel. Co. v. *Norton*, 62 N. W. 1081; W. U. Tel. Co. v. *Church*, 90 N.

W. 879, 881; *Mackay* v. *W. U. Tel. Co.*, 16 Nev. 226; Hale on Damages, pp. 56, 60, 61, 62, 282; *Fleischner* v. *Pacific Postal Tel. Co.*; 55 Fed. 738; *Liman* v. *Penn. R. Co.*, 24 N. Y. S. 824; *W. U. Tel. Co.* v. *Bowen*, 19 S. W. 554; *Pruett* v. *W. U. Tel. Co.*, 25 S. W. 794.)

By the Court, FITZGERALD, J.:

This is the second appeal in this case. On the first trial the jury awarded the plaintiff $1,200 damages, and the court gave judgment for the amount. On appeal therefrom this court reversed the judgment as being excessive. (24 Nev. 125.) This judgment of reversal was rendered October, 1897, nearly seven years ago. On the second trial, an appeal from the judgment in which is here now, the court, sitting without a jury, gave judgment for the plaintiff for the sum of $400. As the foundation of such judgment, the court found the following facts:

"(1) That on the 19th day of February, 1895, at 45 minutes past 1 o'clock in the morning, at Grand Junction, Colo., the said William Barnes delivered to the agent of the defendant a telegram directed to his brother, Thomas J. Barnes, at Lovelock, Nevada, requesting him, the said Thomas J. Barnes, to wire him a ticket to Ogden, Utah.

"(2) At the time of delivering said telegram the said William Barnes informed the agent of the Western Union Telegraph Company that his ticket would only take him to Ogden, and that he had no means to lay over in said city of Ogden. The said William Barnes had but $1.25 in his pocket when he arrived in Ogden in the morning of February 19, 1895. That on arriving in Ogden the said William Barnes made due inquiry as to whether his ticket had arrived. Such inquiries were made a number of times, but he received no ticket, and no reply to his telegram. He did not go to a hotel because his money was insufficient. He purchased one or two meals at a restaurant. He spent his nights in a railroad depot and on the streets, but did not sleep. He was warned by the police several times to get out of town or go to a hotel. February 21st he boarded a west-bound train clandestinely. After riding several hours he was put off the train and walked twenty or twenty-five miles, when he

boarded another train. Thus, alternately riding and walking, he traveled as far as Battle Mountain, where he arrived absolutely without money, February 23, 1895. That during all this time the cold was intense, and the said William Barnes suffered severely from hunger and cold.

"(3) That said telegram was received at defendant's office at the town of Lovelock, Nevada, within twenty-two minutes after it was sent, and on the morning of February 19, 1895. Said telegram was not delivered until February 22, 1895. No effort was made to deliver the telegram February 19th or February 21st. The telegram was not deposited in the post-office addressed to the addressee, nor was the sending office notified of the non-delivery of the telegram.

"(4) At all times between February 19 and February 23, 1895, inclusive, the said Thomas J. Barnes had his residence in said town of Lovelock, and within 300 yards of defendant's telegraph office. Had the defendant exercised only slight diligence, said telegram could have been delivered to the said Thomas J. Barnes on the 19th day of February, 1895. Had said telegram been so delivered, William Barnes could and would have received the ticket asked for in his telegram on the 20th day of February.

"(5) By reason of defendant's negligent failure to deliver said telegram, plaintiff suffered damages in the sum of $400."

Appellant makes various assignments of error, but three only seem to be relied upon in the briefs of its counsel: (1) Insufficiency of the evidence to justify the findings of fact and conclusions of law; (2) contributory negligence on the part of plaintiff; and (3) remoteness of the damages.

On the first point, to wit, the insufficiency of the evidence to sustain the findings and conclusion, it is deemed unnecessary to go into minute analysis of the evidence given at the trial. The most that can be claimed by the appellant is that the evidence is conflicting, and when such is the case the rule of this court has long been that the findings of fact by the trial court will not be disturbed.

On the second point, to wit, contributory negligence on the part of the plaintiff, counsel for appellant state no act of the plaintiff that is by them claimed to be of the nature of contributory negligence. On the contrary, the acts that are

claimed by them to be of the nature of contributory negligence are the acts of two other persons. Under the heading in the brief, "Contributory Negligence," counsel say, "If there was any negligence about it, T. J. Barnes [not the plaintiff, William Barnes] and Mrs. Addington were the negligent parties." No showing whatever is made to connect the plaintiff, William Barnes, with the alleged negligent acts of T. J. Barnes and Mrs. Addington. In such case, even if the acts of T. J. Barnes and Mrs. Addington were conceded to be negligent, it could not avail the defendant.

On the third point, to wit, remoteness of the damages, it, perhaps, may be well to restate the facts in more compact form, thus: By reason of the negligence of defendant in not delivering the telegram in proper time, plaintiff, a minor of 19 years of age, was placed in Ogden, 400 miles distant from his home at Lovelock, Nevada, with only $1.25 in his pocket. Under such circumstances, what was the natural and proper thing for such minor to do? Upon the correct answer to this question, it would seem, the solution of the matter in controversy depends.. As an illustrative analogy, one at least somewhat applicable to the situation here disclosed, suppose the railway company had contracted with plaintiff to take him to Lovelock, but had negligently broken its contract and left him at Ogden, what would be the natural and proper thing for the plaintiff to do? and what damages would that company be responsible to him for? Could it be possible that its responsibility in damages would end with the price paid for railway ticket and hotel bills while the $1.25 lasted, and wages during the same time? Plaintiff could not remain in Ogden, because after the few hours that the $1.25 would pay for his meals and lodging he would have nothing whereon to live. Was he to be expected to give up his home at Lovelock, his business, his residence, his citizenship, and his friends and neighbors in Nevada, and seek new home, new business (or old business), new residence, new citizenship, and new friends and neighbors in Utah? Few of us in Nevada would be pleased to have that alternative forced upon us, and, were the scene of the drama in any other land or state, it is most probable that its citizens would feel upon the subject as we of Nevada feel.

Again, suppose it were held that he should have made the changes above intimated, what assurance is there that he could have in any tolerable time obtained employment in this land in which he, a stranger, was compelled to make his abode? And would not the defendant company, if he did make the change, be responsible to him for reasonable board and wages while he diligently sought employment? Could it be possible that its responsibility in damages would end with the price paid for the railway ticket and hotel bills in Ogden while his $1.25 lasted, and wages during the same time? Plaintiff could not remain in Ogden, because after the few hours that his $1.25 would support him he would have nothing whereon to subsist. Defendant had been informed of this, and thereby became chargeable with knowledge and expectancy of the results naturally flowing from the necessities to which the defendant knowingly subjected the plaintiff, and with the damages so occasioned. If defendant had not been aware, at the time the message was sent, that plaintiff was without means to remain in Ogden, his necessity for leaving there and the attendant hardships would not have been within the contemplation of the defendant. If the plaintiff had had money with which to remain at a hotel, it might have been his duty to do so, and charge the defendant for his expenses and time; but the case is different when the defendant knew that he was without funds to do this, and would likely be forced to suffer humiliation, fatigue, hunger, and cold.

Under the circumstances narrated, was it not the natural and proper thing that the plaintiff should set out, winter as it was, to go afoot or otherwise, when he could honestly do so, to his home at Lovelock, Nevada, 400 miles distant from Ogden, Utah? So it seems; and likewise it seems that whoever negligently caused him to be placed in such a situation should be held responsible to him therefor. The trial court awarded the plaintiff $400 as damages, but appellant claims that that amount is excessive. We think that amount was not excessive. The elements of the damages would be: (1) Price of telegram; (2) wages or compensation for time lost in reaching his home at Lovelock; (3) price of meals and lodging during the time he would be en route; and (4)

"mental worry and distress" accompanying the physical fatigue and cold while out on the winter journey—of course, including the physical suffering itself. Surely $400 could not reasonably be deemed excessive for all this.

Whether or not damage for mental suffering can be allowed is among the courts of the United States a veritable *questio vexata;* some appellate courts hold that such damage can be allowed, and others hold that it cannot. Sometimes the question is whether damages for mental suffering accompanying physical suffering can be allowed, and sometimes the question is whether damages for mental suffering unconnected with physical suffering can be allowed. If mental suffering can be allowed for in any case, what difference would it make whether there were physical suffering or not? Suppose, by reason of the negligence of a defendant, damages resulted to a plaintiff, said damages coming from two sources: (1) Physical suffering, $100; and (2) mental suffering accompanying the physical suffering, of $100 more—making in all $200. If the second element, to wit, the $100 allowed for mental suffering accompanying the physical suffering, was allowed, what difference could it make if the said or similar mental suffering existed by reason of a defendant's negligent act unaccompanied by physical suffering? The reason given in some of the cases why damages cannot be allowed for mental suffering alone is that the just estimation of such damages is so difficult. But if such mental suffering accompanied by physical suffering can and must be estimated, cannot and should not mental suffering unaccompanied by physical suffering be estimated and allowed for in damages? Clearly, if so in one case, logically and reasonably it must be so in the other.

That such damages can be allowed, see the following cases: *Young* v. *Telegraph Company,* 107 N. C. 370, 11 S. E. 1044, 9 L. R. A. 669, 22 Am. St. Rep. 883; *Thompson* v. *Telegraph Company,* 107 N. C. 449, 12 S. E. 427; Gray, Commun. Tel. sec. 65; 4 Lawson, Rights, Rem. & Prac. sec. 1970; 2 Thomp. Neg. p. 847, sec. 11; Sedg. Dam. (8th ed.) sec. 894; Suth. Dam. (2d ed.) sec. 97; 29 Am. Law R. Ev. 267; *Meadows* v. *The Western Union Telegraph Co.* (N. C.) 43 S. E. 512; *Sherrill* v. *Tel. Co.,* 109 N. C. 527, 14 S. E. 94; *Cashion* v. *Tel. Co.,*

123 N. C. 267, 31 S. E. 493; *Bennett* v. *Telegraph Co.*, 128 N. C. 103, 38 S. E. 294; *Lyne* v. *Tel Co.*, 123 N. C. 129, 31 S. E. 350; 8 Am. & Eng. Enc. Law, pp. 658, 662, 663; *Bryan* v. *Western Union. Tel. Co.* (N. C.) 45 S. E. 938; *Hendricks* v. *Tel. Co.*, 126 N. C. 304, 35 S. E. 543, 78 Am. St. Rep. 658; *Graham* v. *Tel. Co.*, 109 La. 1071, 34 South. 92; 3 Sutherland, Damages (4th ed.) sec. 975; Joyce, Elec. Law, sec. 825; *Western Union Tel. Co.* v. *Bowles* (Tex. Civ. App.) 76 S. W. 456; *Western Union Tel. Co.* v. *Chambers* (Tex. Civ. App.) 77 S. W. 273; *Western Union Tel. Co.* v. *Shaw*, Id. 433; *Thompson* v. *Tel. Co.*, 107 N. C. 449, 12 S. E. 427; *Telegraph Co.* v. *Cooper*, 71 Tex. 507, 9 S. W. 598, 1 L. R. A. 728, 10 Am. St. Rep. 772; *So. Relle* v. *Western Union Tel. Co.*, 55 Tex. 308, 40 Am. Rep. 805; Shear. & Red. Neg. sec. 605; *Chapman* v. *Western Union Tel. Co.* (Ky.) 13 S. W. 880; *Reese* v. *W. U. Tel. Co.*, 123 Ind. 294, 24 N. E. 163, 7 L. R. A. 583; *W. U. Tel. Co.* v. *Moore*, 76 Tex. 66, 12 S. W. 949, 18 Am. St. Rep. 25; *Telegraph Co.* v. *Adams*, 75 Tex. 531, 12 S. W. 857, 6 L. R. A. 844, 16 Am. St. Rep. 920; *Telegraph Co.* v. *Feegles*, 75 Tex. 537, 12 S. W. 860; *Stuart* v. *Telegraph Co.*, 66 Tex. 580, 18 S. W. 351, 59 Am. Rep. 623; *Telegraph Co.* v. *Simpson*, 73 Tex. 422, 11 S. W. 385; *Wadsworth* v. *W. U. Tel. Co.*, 86 Tenn. 695, 8 S. W. 574, 6 Am. St. Rep. 864; 3 Suth. Dam. 259; Scott & Jarnigan on Telegraphs, sec. 418; Sedg. Dam. 25; *Renihan* v. *Wright* (Ind. Sup.) 25 N. E. 822, 9 L. R. A. 514, 21 Am. St. Rep. 250.

Many other authorities to the same effect might have been cited, and as many, perhaps, against the doctrine; but we think the better reasoning is in those cases establishing the doctrine. The cases for and against the doctrine will, perhaps, nearly all be found referred to in the cases above mentioned.

That damages may be recovered for the mental suffering occasioned and accompanied by physical injury or fatigue is very generally held by the authorities, and pain of mind directly resulting from exposure, cold, hunger, exertion, and deprivation of a place to sleep, to which the plaintiff was subjected as a natural result of defendant's negligence, would properly come within this well-recognized rule. See *Riley* v. *Railway Co.*, 27 W. Va. 147; *McCoy* v. *Milwaukee St.*

*Ry. Co.*, 88 Wis. 56, 59 N. W. 453; *Cen. R. R. Co.* v. *Lainer*, 83 Ga. 588, 10 S. E. 279; *Caldwell* v. *Central Park* (Com. Pl.) 27 N. Y. Supp. 397; *Davidson* v. *Southern Pac. Co.* (C. C.) 44 Fed. 476; *Wright* v. *Compton*, 53 Ind. 337; *Richmond* v. *Norment*, 84 Va. 167, 4 S. E. 211, 10 Am. St. Rep. 827; *Carpenter* v. *Mexican Nat. R. Co.* (C. C.) 39 Fed. 315; *Stockton* v. *Frey*, 45 Am. Dec. 138; *Brown* v. *C. M. & St. P. R. Co.* (Wis.) 11 N. W. 356, 911, 41 Am. Rep. 41; *Hoover* v. *Haynes*, (Neb.) 93 N. W. 732.

Where railroad companies have negligently left passengers at the wrong station, and thereby exposed them to cold, fatigue, and suffering, verdicts for damages for larger amounts in proportion to the hardship undergone than the judgment here bears to the injury sustained have been held not excessive. (*Lake Erie R. Co.* v. *Cloes* (Ind. App.) 32 N. E. 588, *Louisville R. Co.* v. *Ballard* (Ky.) 10 S. W. 429, 2 L. R. A. 694, and other cases cited in the brief.) This much under the first branch of the rule laid down in the case cited by counsel for appellant, to wit, the English case of *Hadley* v. *Baxendale*, Exch. 341, 354, 23 L. J. Ex. 179, 182, to wit, damages which may fairly and reasonably be considered as naturally arising from the breach of contract.

Under the second branch of the rule laid down in the *Hadley-Baxendale Case*, we think the same result would follow, to wit, damages which arise from circumstances peculiar to the case where those special circumstances are known to the person who has broken the contract. The English court ruled that damage of the last-mentioned kind "must be supposed to have been contemplated by the parties to the contract, and is recoverable." (See Wood's Mayne on Damages, p. 21.)

In *Western Union Telegraph Co.* v. *Norton* (Tex. Civ. App.) 62 S. W. 1081, a telegram was sent requesting the sendee to meet the sender at a flag station on the railroad, and it was held that the telegraph company might reasonably infer that as a result of its failure to deliver the message the sender would be compelled to walk alone in the night, subject to distress of mind.

Other cases indicating that the damages are not too remote are cited in the brief, including *Hendershot* v. *Western Union*

*Telegraph Co.* (Iowa) 76 N. W. 828; 68 Am. St. Rep. 313; *Pruett* v. *Western Union Telegraph Co.* (Tex. Civ. App.) 25 S. W. 794.

We think in the case at bar that the evils and damage coming to plaintiff by reason of defendant's negligently causing him to be placed in the situation that he was on his arrival at Ogden and during his journey to Battle Mountain were reasonably within the contemplation of the parties, plaintiff and defendant, when they entered into their contract of sending the telegraphic message at Grand Junction, Colo. The evils and damages that came to plaintiff after his arrival at Battle Mountain, to wit, breaking of his leg, etc., were not claimed or allowed for in damages in the case, and therefore need no consideration in this opinion.

Under the circumstances of the case, we, for the foregoing reasons, think the damages awarded to the plaintiff by the trial court were neither remote nor excessive, and therefore its judgment in the case is affirmed.

TALBOT, J.: I concur.

BELKNAP, C. J., dissenting:

Upon the facts I think the damages are excessive, and not within the contemplation of appellant when it entered into the contract to transmit the message.

The case of *Squire et al.* v. *Western Union Tel. Co.*, 98 Mass. 232, 93 Am. Dec. 157, was tort for neglect to deliver a telegraphic message seasonably. In that case, as in this, there were no special stipulations or restrictions attached as to defendant's liability, and it was held responsible according to the general rules of law. The court in that case said: "These rules, in their application to damages in actions of this nature, are well settled and familiar. A party who has failed to fulfill a contract cannot be held liable for remote, contingent, and uncertain consequences, or for speculative or possible results which may have ensued on his breach of duty, although they may be traceable to that cause. The reason is that damages of such a nature are not the natural or necessary incidents of a contract, and cannot be deemed to have been within the contemplation of parties when they agreed together. A rule of damages which should embrace

within its scope all the consequences which might be shown to have resulted from a failure or omission to perform a stipulated duty or service would be a serious hindrance to the operations of commerce and to the transaction of the common business of life. The effect would often be to impose a liability wholly disproportionate to the nature of the act or service which a party has bound himself to perform and to the compensation paid and received therefor. The practical rule, founded on a wise policy, and at the same time consistent with good sense and sound equity, is that a party can be held liable for breach of a contract only for such damages as are the natural or necessary, and the immediate and direct, results of the breach, such as might properly be deemed to have been in contemplation of the parties when the contract was entered into, and that all remote, speculative, and uncertain results  *  *  *  must be excluded, as forming no just or legitimate basis on which to determine the extent of the injury actually caused by a breach."

Let us apply the law as there laid down to the facts as stated in the opinion of the majority. The direction in the message to send a ticket to the plaintiff at Ogden was of a pecuniary nature, and the breach of the contract should be measured by standards applicable to pecuniary matters. The natural consequence of a failure to deliver the message would be the actual damage plaintiff sustained, such as his reasonable expenses during the delay, loss of time, and the cost of the message. Mental anguish was not the natural or necessary consequence of the breach, nor its immediate or direct result. It was the secondary, and not the primary, consequence, and damages for it could not have been within the contemplation of the parties when they entered into the contract.

I therefore dissent from the judgment.