THE BABCOCK & WILCOX CO., a Corporation, B. T. KEHOE and JOHN DOE JARVIS, Appellants, v. CHESTER D. NOLTON and MARGUERITE NOLTON, His Wife, Respondents.

No. 3190

October 5, 1937.                    71 P. (2d) 1051.

*Leo A. McNamee* and *Frank McNamee, Jr.,* for Appellant:

136

*Ham & Taylor* and *V. Gray Gubler,* for Respondents:

## OPINION

By the Court, DUCKER, J.:

The appellant seeks a reversal of a judgment of the district court for $15,000 assessed against it by the verdict of the jury as compensation for personal injuries alleged to have been sustained by the respondent Marguerite Nolton on premises controlled by the company and in consequence of its negligence.

On January 18, 1935, and for some time prior thereto, appellant was a corporation engaged in the manufacture and fabrication of steel piping and tubing near Boulder City, and maintained an office adjacent to its plant. In front of its office and to the southward, separated by a terrace, it maintained an automobile parking space. The area of land embraced in this space was roughly in the shape of a letter "V," with the upper part abutting the terrace and extending a short distance to the left, or in a westerly direction. A small stairway directly in front of the center of the building extended from the parking space to the top of the terrace. This space was reached by automobiles over a private road about 200 yards in length, branching from the Boulder Dam highway and entering the parking area from the south, at the tip of the "V." On the terrace immediately to the right and east of the stairway leading to the top of it was a sign which read: "Company Cars Only." Immediately to the west of the stairway and on the terrace was a sign which read: "Government Cars Only," and about 20 feet west of that on the terrace was a sign which read: Company Cars Only." On the west side of the private roadway where it entered the area was a sign which read: "Visitors Parking."

A driveway extended from the upper easterly part of the parking space northeasterly around the office building to the fabricating plant, a distance of about 200 feet. A water hydrant was situated on this driveway halfway between the office and the fabricating plant. At the

west end of the building which housed the plant a stairway on the outside lead from the ground to a door above opening into a landing provided by appellant as a visitor's gallery for the convenience of tourists and other sightseers from which they could view the work going on below. At the foot of this stairway was a sign which read: "Visitor's Gallery."

The fashioning of the huge pipes and tubes for the tunnels of the Boulder Dam project was a work of great interest and attracted many visitors to the plant. The government guides and others included this plant in their itinerary.

On January 18, 1935, respondents, traveling in their automobile with a government guide, came from the Boulder Dam highway over the private road and entered the parking space for the purpose of visiting the fabricating plant. At the direction of the guide respondent Nolton, who was driving, parked his car at a point immediately to the right of the terrace stairway and about 40 feet south of it. Nolton and his guide proceeded to the visitor's gallery. Mrs. Nolton remained in the automobile. While they were at the plant Wesley B. Jarvis, an employee of appellant, drove a Ford truck in from the Boulder Dam highway over the private road to the water hydrant. After replenishing the radiator, he backed the truck down the highway around into the parking space against respondents' automobile. The impact damaged the door and spring of the latter vehicle and injured Mrs. Nolton.

Appellant contends that all of the parking space dominated by the signs on the terrace was a restricted area from which automobiles carrying visitors were excluded, and that consequently respondents were trespassers to whom appellant owed no duty, except to refrain from willfully or wantonly injuring them; and that the evidence shows that such duty was not violated.

Appellant, in addition to assigning as error insufficiency of the evidence and excessive damages, specifies

error as to a number of instructions given and refused. The contention of error as to the instructions was practically abandoned, except as to one which will be discussed later. In their reply brief counsel for appellant make no reply to the defense made by counsel for respondents in their brief as to the instructions. Moreover, in the oral argument in this court, the former stated there was little difficulty with the instructions, and that their main contention was that the evidence is insufficient to sustain the verdict and judgment.

We are of the opinion that the jury was fully and fairly instructed on the law of the case.

It is insisted by appellant that the sign at the portal of the parking space on the south, reading, "Visitors Parking," carried an arrow pointing to the left of the signs on the terrace, and by respondents that this sign was so placed as to invite visitors to any part of the parking space. However, we need not determine the dispute. Conceding that the parking space before the office building clear to the southern extent of such space was a restricted area as noticed by the signs on the terrace, we think there was sufficient evidence to entitle respondents to recover as licensees. The jury were correctly instructed as to this phase of the case, as follows:

"A license is distinguished from an invitation, in that a licensee is on the premises by sufferance only and not by virtue of any business or contractual relation with, or any enticement, allurement, or inducement to enter held out to him by the owner or occupant, but merely his own interest and for his own purposes, benefit, convenience or pleasure."

"In order that a person may have the status of a licensee the owner or person in charge of the premises must have knowledge of his entry or his presence thereon, or of a customary use of the particular portion of the property used for the purpose for which such person is using it."

"You are instructed that with respect to a licensee,

the owner or person in charge of property owes him no duty except to refrain from willfully or wantonly injuring him, or to use care to avoid injuring him after his presence is, or under the circumstances, should have been discovered."

"Even active negligence, causing injury to a licensee, does not create a liability unless the person guilty of such active negligence, or his employer was, or in the exercise of a reasonable care should have been aware of the presence of the licensee in a place where he might be injured."

" * * * If you find from a preponderance of the evidence that the portions of this space so designated for the use of company cars or employees' cars was habitually used by visitors to park their cars on, without objection by the defendant, such customary or habitual use without objection may give rise to an implication of consent to such use so that the users may have the status of licensees instead of trespassers."

Respondents' evidence tends to prove such habitual or customary use by visitors in parking their cars in the space indicated by the signs on the terrace as a restricted area.

Respondent Nolton testified that at Boulder City through arrangements with the city manager he was furnished with a government guide, and that his car was parked in the place where the accident occurred by the direction of that guide.

Jerry George, a witness for respondents, testified that in the month of January 1935, he was a bus agent for the Union Pacific Company driving from Las Vegas to Boulder City and other points, and had been in that employment for some time during the year 1934; that his employment in that capacity took him to Boulder City sometimes twice a day for a week and then again weekly. On these trips he always drove into the parking space, as the fabrication plant was one of the attractive spots. He would park his bus in front of the office

building and the passengers would walk to the plant. "Usually," he said, "the busses, because of their length, we would try to back up beyond to the left of the building as you enter," but it was his custom to park anywhere upon that area where there was an open parking space. He further testified that on these trips he had seen many automobiles of visitors on the area that he parked upon. "I have seen so many in there," he said, "that it was rather hard to find a place to park."

"Q. In front of the building did you see them? A. Yes.

"Q. Would you say they extended at times out to the road leading down to the fabricating plant? A. Well, I have seen them parked there, they would have to be parked double in order to extend out to the road, but I have seen that. I have seen it full.

"Q. Parked clear to the road? A. Yes."

This condition was mostly on week-ends and holidays, he stated.

W. H. Trimble was a witness for respondents. He was chief of police in Boulder City, and chief ranger. He had been in such employment for about two years prior to the accident. His duties had to do with traffic in and about Boulder City, around the dam and areas, to prevent congestion, to enforce speed laws and regulate parking. He was familiar with the parking area in front of appellant's office.

"Q. Did that area extend up to the road that went through to the Babcock-Wilson plant? A. Yes, sir.

"Q. Have you seen automobiles parked up parallel to that road, maybe one or two lanes of cars, besides the company cars? A. I have seen different bunches of cars parked to the left.

"Q. And close to the highway? A. Up there at the neck it was very close, yes.

"Q. And was any complaint ever made to you that cars shouldn't stop there? A. I never had a complaint about parking in there, I have never had to send a man there at all.

"Q. Have you seen them park virtually, visitor's cars, virtually all over the place? A. At different times I have, yes."

Fred Jensen testified in behalf of respondents. He was a deputy sheriff during January 1935. Previous to that and since August 23, 1931, he had been a United States ranger. His official duty was to handle traffic from Boulder City to Boulder Dam and adjacent areas, including appellant's plant and parking space. He had particular knowledge of said parking space during the month of January 1935, and had charge of the traffic in and about it. Asked if he knew who used all of that area for parking, he replied: "Well, most everybody knew it was the only place to park in there, so naturally everybody that went into the B & W used that area." He testified that all of the area to the left of the road leading to the fabrication plant was used by visitors and the public generally for parking purposes; that in January 1935 there were a lot of them coming in there, about 225 cars a day; that tourists parked anywhere, clear to the main road; that during the month of January 1935 it was customary to park a line of visitors' cars in that area immediately in the rear of the company cars. He testified that neither Mr. Kehoe, the superintendent, or any official of the company ever complained to him about the parking on that area, or ever instructed him to keep people off of it.

■ This evidence, though in the main contradicted by employees of appellant and others testifying in its behalf, was sufficient to warrant the jury in giving the respondents the status of licensees.

■ Appellant contends the evidence fails in this respect because it does not show that appellant had knowledge of such customary use. While there is no direct evidence of knowledge on the part of appellant, we are of the opinion that the circumstances as shown by respondents' witnesses of the use constantly made of the parking space immediately in front of the office building used

by the superintendent and other officials of the appellant tended to prove knowledge on its part. At the least, circumstances were sufficient to imply knowledge. That such knowedge may be implied was recognized in Brannan v. Wimsatt, 54 App. D. C. 374, 298 F. 833, 36 A. L. R. 14.

■ As the jury was entitled to conclude from the evidence that respondent Mrs. Nolton had the status of a licensee on the premises, the duty imposed on appellant was, as stated in the instructions, to refrain from willfully or wantonly injuring her, or to use care to avoid injuring her after her presence was, or under the circumstances should have been, discovered.

■ There is no evidence of willful or wanton negligence on the part of appellant's employee in backing the truck against respondents' car, but the evidence sustains lack of due care on his part, resulting in active negligence, for which appellant is liable. The great weight of authority is to the effect that a person guilty of active negligence, as distinguished from passive negligence, is liable for resulting injury to a licensee. Brigman v. Fiske-Carter Constr. Co., 192 N. C. 791, 136 S. E. 125, 127, 49 A. L. R. 773, and cases collected in the annotation to the latter citation on page 783 et seq. The facts in Brigman v. Fiske-Carter Constr. Co., supra, are practically the same as in the instant case, except as to the status of the parking place in which the car struck by the truck was standing. The court held that the woman injured was an invitee on the premises, but stated: "If the owner, while the licensee is upon the premises in the exercise of due car, is affirmatively and actively negligent in the management of his property or business, as a result of which the licensee is subjected to increased hazard and danger, the owner will be liable for injuries sustained as the result of such active and affirmative negligence."

We are in accord with the rule declared. We have carefully reviewed the evidence as to damages. There

is a conflict as to the extent and permanency of Mrs. Nolton's injuries, but enough was proved to sustain the verdict against the charge that it was excessive. Mrs. Nolton's testimony shows injuries to her lower back and right leg of a permanent nature, resulting in suffering and the impairment of her health and nervous system. Her testimony in these respects is corroborated by physicians who testified in behalf of respondents. In addition, there was considerable outlay for examinations and treatment by physicians, drugs, etc.

Appellant complains of the instruction in which the court stated the elements of damages for which recovery could be had. It reads in part:

"In assessing damages, if you find the plaintiffs entitled to recover damages, you should take into consideration the following elements, in the event any of them are found to exist, and allow adequate compensation therefor. * * *

"(8) Physical and bodily pain in consequence of the wrong, if any:

"(9) Mental pain and suffering by Marguerite Nolton, if any. * * *"

The item complained of is pain of mind, and it is contended that the case of Johnson v. Wells, Fargo & Co., 6 Nev. 224, 3 Am. Rep. 245, is ruling against the recovery of such element of damages. That is a case which arose from the negligence of the appellant in furnishing an unsafe coach for transportation, the breaking down of which the injury complained of was caused. The lower court instructed the jury that in estimating damages it could take into consideration the bodily suffering of the plaintiff, his pain of mind, etc. The part allowing consideration of pain of mind was condemned by the court, which held that mental pain as distinct from bodily pain is not the subject of compensation where the injury is the result of negligence. This rule declared in Johnson v. Wells, Fargo & Co., supra, was criticized in Quigley v. C. P. R. R. Co., 11 Nev. 350, 21

Am. Rep. 757 and a contrary view taken in Powell v. Nevada, C. & O. Ry., 28 Nev. 40, 78 P. 978; Id., 28 Nev. 305, 82 P. 96, an action for personal injuries caused by negligence. In the latter case the court held that there is no fixed rule for the measure of damages, especially for mental anguish apart from physical suffering, and much must be left to the jury under proper instructions from the court.

Quigley v. C. P. R. R. Co., supra, was not a case of wrongful injury by negligence, but for injuries willfully inflicted, and the court held that mental anguish was a proper element of damage. Justice HAWLEY, who wrote the main opinion, criticized the ruling in Johnson v. Wells, Fargo & Co., supra, in the following language: "The instruction which was there given authorized the jury in estimating the damages to take into consideration 'the bodily suffering of the plaintiff, his pain of mind,' etc. The objections were to the words 'his pain of mind,' and a majority of the court held that the plaintiff was not entitled to any damages for 'his pain of mind, aside and distinct from his bodily suffering.' A careful examination of all the authorities cited and reviewed in Johnson v. Wells, Fargo & Co. and of the subsequent cases of Pennsylvania & Ohio Canal Co. v. Graham, 63 Pa. 290 [3 Am. Rep. 549]; Smith v. Holcomb, 99 Mass. 552; Holyoke v. Grand Trunk Railway, 48 N. H. 541; Matteson v. New York Central R. Co., 62 Barb. [N. Y.] 364; Smith v. Overby, 30 Ga. 241; Cox v. Vanderkleed, 21 Ind. 164; Gould v. Christianson [Fed. Cas. No. 5,636], 1 Blatchf. & H. 507; Cooper v. Mullins, 30 Ga. [146], 152 [76 Am. Dec. 638]; and Fay v. Parker, supra [53 N. H. 342, 16 Am. Rep. 270], which bear more or less upon the point decided, has convinced me that the instruction in Johnson v. Wells, Fargo & Co., in the particulars referred to, was correct."

We are of the opinion that Justice HAWLEY'S criticism was just and that the ruling criticized is opposed by the weight of authority. Justice WHITMAN, who wrote the

opinion in Johnson v. Wells, Fargo & Co., decided in 1870, stated that "it is safe to say, no well considered case can be found to support the instruction in the present."

Be that as it may, subsequent authority is ample and satisfactory. The rule thus established is stated in 17 C. J. p. 832: "Mental pain and suffering as a direct and necessary consequence of a physical injury is a distinct element of damages, and the person injured is entitled to compensation therefor. The mental pain for which compensation may be had under this rule, however, must be such as accompanies the physical injury and is fairly and reasonably the natural consequences which flow from it."

A wealth of authority cited in notes 68 and 69 supports the rule stated.

In addition may be cited: Macke v. Sutterer, 224 Ala. 681, 141 So. 651; Krinard v. Westerman, 279 Mo. 680, 216 S. W. 938; Gulport & Mississippi Coast Traction Co. v. Raymond, 157 Miss. 439, 128 So. 327; Morris v. St. Paul City Ry Co., 105 Minn. 276, 117 N. W. 500, 17 L. R. A. (N. S.) 598; Iseman v. Hayes, 242 Ky. 302, 46 S. W. (2d) 110, 85 A. L. R. 996; Merrill v. Los Angeles Gas & Electric., 158 Cal. 499, 111 P. 534, 540, 139 Am. St. Rep. 134, 31 L. R. A. (N. S.) 559; 8 R. C. L. 512.

The reason given in Johnson v. Wells, Fargo & Co. for the ruling forbidding recovery for mental suffering, in addition to lack of precedent, is that such damages are incapable of any definite calculation. It is not discernible why they are any more difficult of estimation than damages for bodily suffering, yet the latter has been constantly held to be a proper element of damages. As stated by the court, speaking through Justice Henshaw in Merrill v. Los Angeles Gas & Electric Co., supra: "In truth the admeasurement of suffering in terms of money is a most clumsy device; but it is the best device which the law knows, and it is a device which the law will employ until some better is discovered. To forbid

the consideration of these other elements of mental suffering, because the scales are not sufficiently delicate for their admeasurement, is equally to condemn the use of the scales, in the very cases and for the very purposes now admittedly sanctioned by the law."

That recovery of damages may be had for mental pain, disassociated from bodily suffering in damage cases growing out of contract, is the settled law of this state. Barnes v. W. U. Tel. Co., 27 Nev. 438, 76 P. 931, 65 L. R. A. 666, 103 Am. St. Rep. 776, 1 Ann. Cas. 346; Burrus v. N.-C.-O. Ry. Co., 38 Nev. 156, 145 P. 926, L. R. A. 1917D, 750.

If the law can weigh mental suffering in that class of cases, why may it not with equal justice do so in cases where the wrongful act causing physical injury is the result of negligence? Johnson v. Wells, Fargo & Co., insofar as it holds that mental pain, as distinct from bodily pain, is not the subject of compensation in a case where the injury is the result of negligence, is expressly overruled.

The instruction is not objectionable in including mental pain as an element of damages for which compensation could be allowed. If appellant wished a more specific instruction in that respect, he should have requested it.

The judgment and order denying a new trial are affirmed.